**CALVIN KLEIN TRADEMARK TRUST and Calvin Klein, Inc., Plaintiffs,**

v.

**Linda WACHNER, The Warnaco Group, Inc., Warnaco Inc., Designer Holdings Ltd., CKJ Holdings, Inc., Jeanswear Holdings, Inc., Calvin Klein Jeanswear Company and Outlet Holdings, Inc., Defendants.**

No. 00 Civ. 4052(JSR).

United States District Court, S.D. New York.

Dec. 20, 2000.

David Boyd, Jonathan Schiller, New York City, for Plaintiffs.

Kevin Baine, Brendan Sullivan, Washington, DC, for Defendants.

## MEMORANDUM

RAKOFF, District Judge.

This Memorandum sets forth the reasons for the Court's Order of December 13, 2000 regarding some further issues of attorney-client privilege and work product protection that have arisen during the course of discovery in this case. *See also Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53 (S.D.N.Y.2000). Based on its review of underlying documents (*see infra*), the Court finds the pertinent facts to be as follows.

In or around the Summer of 1999, the management of plaintiff Calvin Klein, Inc. ("CKI"), with the help of law firm Wachtell, Lipton, Rosen & Katz ("Wachtell") and investment banking firm Lazard Frères & Co. ("Lazard"), began exploring the possibility (ultimately unrealized) of selling CKI to such prospective purchasers as Tommy Hilfiger, U.S.A., Inc. ("Hilfiger"). In connection with these explorations, Lazard and Wachtell, in consultation with their client CKI, began drafting various offering memoranda and other disclosure documents that might be given to the prospective purchasers. The determination of what to disclose, and in what manner, was affected, among other respects, by various difficulties CKI was experiencing with several of the instant defendants (for convenience referred to here as "Warnaco"), with whom CKI had various contractual arrangements. At least as early as December, 1999, CKI formally sought Wachtell's legal advice as to what disclosures, if any, should be made to such prospective purchasers regarding CKI's disputes with Warnaco, and in what form. Additionally, by January, 2000, if not earlier, CKI sought Wachtell's advice as to whether or not to bring suit against Warnaco.

Subsequently, CKI hired a different law firm, Boies, Schiller & Flexner, to bring the instant lawsuit, which was filed on May 30, 2000 and which alleged, *inter alia,* that Warnaco had breached its contracts with CKI and infringed trademarks in which CKI and/or co-plaintiff Calvin Klein Trademark Trust had an interest. Thereafter, in the course of discovery, Warnaco received copies of those of the aforementioned disclosure documents that CKI had actually furnished to Hilfiger in connection with their mutual discussions. In these documents, CKI represented, *e.g.,* that no material contract to which CKI was a party "has been breached" and that "no material infringement actions [are] being taken or contemplated to be taken ... [for] infringement of the [Calvin Klein trademarks]"—representations arguably inconsistent with assertions made by plaintiffs in the instant lawsuit. Other discovery, however, suggested that some of the disputes between CKI and Warnaco may have been orally disclosed to Hilfiger during discussions between various Hilfiger

representatives and various CKI representatives, including lawyers from Wachtell.

Based on the foregoing, Warnaco sought further discovery regarding the basis for, and accuracy of, such disclosures as were made by CKI's representatives, either orally or in writing, to Hilfiger or other prospective purchasers. Among the discovery so sought were documents from Lazard and Wachtell and testimony from one or more Wachtell attorneys. In response, CKI asserted attorney-client privilege and work product protection with respect to those of the documents sought from Lazard and Wachtell that had never been disclosed to third parties; as a result, Lazard and Wachtell withheld numerous documents from CKI and furnished, after some delay, appropriate privilege logs. Additionally, both CKI and Wachtell objected to defendants' attempts to take the depositions of various Wachtell attorneys, asserting not only attorney-client privilege and work product protection, but also, even as to non-privileged testimony, the argument that defendants had not made a sufficient showing to warrant the "last resort" of taking testimony from an adversary's counsel.

After receiving written submissions, hearing oral argument, and personally reviewing *in camera* each of the numerous withheld documents, the Court, by order dated December 13, 2000, (i) sustained CKI's assertions of privilege and work product with respect to all but one of the documents in question, and (ii) permitted defendants to take the deposition of the primarily-involved Wachtell partner only to the extent necessary to determine precisely what he or other Wachtell attorneys had actually represented, orally or in writing, to Hilfiger or to other prospective purchasers of CKI, but not to determine the basis or accuracy of the representations so made.

█ With respect to the documents, it is evident on inspection that the vast majority of the documents listed on the Lazard and Wachtell privilege logs involve, in one way or another, joint discussions among CKI, Lazard, and Wachtell as to what CKI was legally required to disclose to prospective purchasers at various stages of negotiations. While Warnaco argues that Lazard's inclusion in the discussions waived the attorney-client privilege that would otherwise apply to the documents that reflect those discussions, it is clear to the Court that Lazard's roles in participating in those discussions and helping draft these documents, to the extent such roles were more than ministerial, involved rendering expert advice as to what a reasonable business person would consider "material" in this context. "Materiality" in this regard is a mixed question of fact and law, which a responsible law firm in Wachtell's place would not be able to adequately resolve without the benefit of an investment banker's expert assessment of which facts were "material" from a business person's perspective. Lazard was therefore serving, so far as these documents are concerned, an interpretive function much more akin to the accountant in *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961) than to the public relations firm in *Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53 (S.D.N.Y.2000). Thus, the assertion of attorney-client privilege must be sustained as to these documents.

█ While there a few documents on the privilege logs that do not meet the foregoing description, with one exception they also involve the rendering of legal advice by Wachtell to CKI, mostly in respect to anticipated litigation with Warnaco, so that they are either protected by attorney-client privilege or, in the few instances where these latter documents have been disclosed to third parties assisting CKI, by work product doctrine. *See Calvin Klein Trademark Trust, supra.* The only exception is document no. 112 on the Lazard log, a draft press release and accompanying memorandum requesting comments from counsel, that was prepared on behalf of CKI and Lazard by the public

relations firm of Robinson, Lerer & Montgomery. Notwithstanding the cover memo, the document, on inspection, discloses neither confidential client communications made for the purpose of seeking legal advice nor attorney work product. *Cf. Calvin Klein Trademark Trust,* 2000 WL 1781621, at *2. Accordingly, document no. 112 must be provided to defense counsel; but all the other documents ·on the Lazard and Wachtell ·privilege logs may continue to be withheld.

In reaching this conclusion, the Court is cognizant that some authority suggests that a party's voluntarily disclosure to a third party waives privilege not only with respect to the disclosure itself but also with respect to the "details underlying the data which was to be published," including, *inter alia,* "all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the [disclosure]." *United States v. (Under Seal),* 748 ·F.2d 871, 875 and n. 2 (4th Cir.1984). *See, e.g., United States v. Cote,* 456 F.2d 142, 144–45 (8th Cir.1972); *and cf. United States v. Tellier,* 255 F.2d 441, 447. (2d Cir.1958). If read as defendants would read them, such cases would render it virtually impossible for a corporate client to have a candid and full discussion with its counsel as to what should be disclosed. to a prospective purchaser or customer, since any disclosure would waive privilege as. to those discussions. On closer reading, however, it is clear that the aforementioned cases, and other cases relying upon them, in addition to involving very different factual scenarios from the one here present, typically involve situations in which the party making the disclosure was seeking to use it affirmatively in the controversy in issue without permitting its adversary to inquire about the basis or accuracy.of the disclosure: in other words, the classic sword instead of shield. Here, the adequacy of CKI's disclosure to Hilfiger is not an issue in the instant litigation with Warnaco.

■ As the Second Circuit, distinguishing *Tellier, supra,* held in *In re von Bulow,* 828 F.2d 94, 102 (2d Cir.1987): "the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication." More generally, the Court applying the principles of fairness embodied in *von Bulow* and other cases, *see, e.g., In re Grand Jury Proceedings,* 219 F.3d 175 (2d Cir.2000); *United States v. White,* 887 F.2d 267 (D.C.Cir.1989), concludes that a waiver of the kind suggested in *United States v. (Under Seal)* has not occurred in this case.

Of course, such waiver may yet occur at trial. According to defense counsel, Warnaco will seek to introduce at trial the written representations made by CKI to Hilfiger as admissions of CKI arguably inconsistent with CKI's positions in this case. Although CKI's response may simply be that the combination of its written and oral disclosures to Hilfiger are consistent with its present claims, plaintiffs' counsel hints, in effect, that CKI may go further and, for example, implicitly suggest to the jury that the manner in which this combination of disclosures was arrived at was based on the advice of counsel. *See* defense counsel's letter of December 11, 2000 at 4. This, and other possibilities too numerous and speculative to mention here, might well waive both attorney-client privilege and work product protection, in which case the Court would make provision, even in the midst of trial, for appropriate discovery by defendants. Counsel for plaintiffs is therefore cautioned to proceed with circumspection in this area.

■ As to the testimony of the Wachtell attorneys who participated in actually making the written and oral disclosures to Hilfiger, it is obvious from the foregoing that attorney-client privilege bars Warnaco from pursuing any of the areas as to which it sought to take the Wachtell attorneys'

testimony *other* than ascertaining from them what statements they actually made, orally or in writing, to Hilfiger or other prospective purchasers of CKI. Warnaco has agreed, moreover, that, at least initially, it will limit itself with respect to such inquiries to taking the testimony of the Wachtell partner primarily involved in making such disclosures, Trevor Norwitz. Nonetheless, CKI and Wachtell object even to such limited testimony on the ground that, under the doctrine of *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir.1986), a party should not be able to take the deposition of its adversary's counsel except in extreme circumstances arguably not present here. But quite aside from the fact that, as CKI and Wachtell concede, the restrictive, multi-part test of *Shelton* has never been expressly adopted by the Second Circuit, CKI and Wachtell read the underlying doctrine of *Shelton* and its progeny far too woodenly and without regard to either the purposes it primarily serves or the purposes it disserves.

■ The most important purpose served is to bar the disruption and misuse of the adversary process attendant on allowing a party to depose its adversary's litigation counsel. *See, e.g., United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000). But CKI's litigation counsel here is Boies, Schiller & Flexner, and Wachtell's role in the litigation has been peripheral at best. It is true that even non-litigation counsel may feel a slight chill in rendering legal advice if there is a possibility she or he may thereby become subject to being deposed. But this chill can hardly be said to be present where, as here, the lawyer's testimony is limited to what he was expressly authorized by the client to publicly disclose. To hold otherwise would, as a practical matter, be tantamount to immunizing lawyers from ever being deposed as fact witnesses to public events involving their clients, an immunity that would severely disserve the search for truth that is the bedrock of justice.

To be sure, there may be circumstances where there are other adequate witnesses whose testimony renders the prospective deposition of witness-lawyers cumulative, trivial, or otherwise unnecessary. But here, it is obvious that the Wachtell lawyer primarily involved in making CKI's disclosures to Hilfiger is in a far better position than anyone else to testify as to exactly what he and his colleagues stated. Furthermore, while it is true, as CKI and Wachtell argue, that Warnaco has not explored every possible alternative source of this information, the Court finds that Warnaco has made reasonable efforts to explore a reasonable number of these alternative sources and has not obtained anything nearly as particularized as what the primary Wachtell lawyer could reasonably be expected to offer.