# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-1827

_____

| | | |
|---|---|---|
| Pamida, Inc.; | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| Alan M. Anderson; Renee L. Jackson; | * | |
| Nicholas A.J. Vlietstra; Cynthia M. | * | |
| Klaus; Christopher K. Larus; | * | |
| | * | |
| Movants-Appellants, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Minnesota. |
| | * | |
| E.S. Originals, Inc.; | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Dynasty Footwear, Ltd.; | * | |
| | * | |
| Defendant-Appellee, | * | |
| | * | |
| Jan Jahn; | * | |
| | * | |
| Movant. | * | |
| | * | |

_____

Submitted: December 14, 2001
Filed: February 25, 2002

_____

Before MURPHY and HEANEY Circuit Judges, and PIERSOL[1], District Judge.
_____

PIERSOL, District Judge.

Pamida, Incorporated, Alan M. Anderson, Renee L. Jackson, Nicholas A.J. Vlietstra, Cynthia M. Klaus, and Christopher K. Larus appeal the district court's[2] partial denial of their motion to quash subpoenas. We affirm.

I.

This appeal stems from an indemnification action brought by Pamida, Incorporated (Pamida) against Dynasty Footwear, Ltd. (Dyansty), E.S. Originals, Incorporated and others. Pamida brought suit in the United States District Court for the District of Nebraska seeking indemnification for costs, including attorneys' fees, incurred in the defense and settlement of a patent infringement action brought against Pamida by Susan Maxwell.

Maxwell brought suit against Pamida in July 1995 alleging that Pamida infringed her patent for a shoe tying system. According to Dynasty, Pamida rejected Maxwell's early settlement overtures to settle the case for $100,000 and instead chose to engage in protracted litigation. Pamida spent nearly five years and $750,000 in attorneys' fees litigating against Maxwell and ultimately settled the claims in

_____

[1]The Honorable Lawrence L. Piersol, Chief United States District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota affirming an order of Magistrate Judge John M. Mason.

-2-

December 2000 for $475,000 and a license to utilize Maxwell's patented shoe tying system for a royalty of 45¢ for each pair of shoes.

In March 2000, before the settlement of the patent infringement case, Pamida commenced the instant action against Dynasty and others seeking indemnification. In the indemnification case, Pamida chose to employ the same attorneys that had been and were representing it in the patent infringement case – i.e., the law firm of Larkin, Hoffman, Daly & Lingren, Ltd. (LHDL) located in Minneapolis, Minnesota. On February 9, 2001, two months after the patent infringement action had been settled, Dynasty served five LHDL attorneys with subpoenas seeking both deposition testimony and the production of documents relating to LHDL's representation of Pamida. The issues on which Dynasty seeks to depose the LHDL attorneys are central to the instant litigation and include what actions Pamida took to give Dynasty notice of the patent infringement action brought by Maxwell and its claim for indemnity from Dynasty as well as whether the $750,000 in attorneys' fees sought by Pamida were reasonably incurred in defending the patent infringement action.

The five LHDL attorneys subpoenaed by Dynasty are those acting as counsel for Pamida in the instant indemnification action: Alan M. Anderson, Renee L. Jackson, Nicholas A.J. Vlietstra, Cynthia M. Klaus, and Christopher K. Larus. One of those attorneys, Renee L. Jackson, was identified by Pamida in response to Dynasty's interrogatories as the person who notified Dynasty of the patent infringement action. Dynasty also seeks unredacted billing statements detailing LHDL's representation of Pamida in both the underlying patent infringement action and the instant indemnification action.

Pamida and the LHDL attorneys subpoenaed filed a motion seeking a protective order, pursuant to Fed. R. Civ. P. 26(c), directing that the depositions not be taken, that the documents need not be produced, and that the subpoenas *duces tecum* be quashed. The magistrate judge denied the motion to quash with respect to

testimony and documents concerning the patent infringement suit, but granted it with respect to testimony and documents concerning the indemnification action. The district court[3] affirmed the magistrate judge's order. For reversal, Pamida and the LHDL attorneys argue that the district court abused its discretion in refusing to grant the motions to quash in their entirety and further that the district court abused its discretion in exceeding the scope of their motions to quash by ruling on the documents to be produced in connection with the subpoenas.

## II.

We review the district court's decision regarding the motion to quash for an abuse of discretion. See Miscellaneous Docket #1 v. Miscellaneous Docket #2, 197 F.3d 922, 925 (8th Cir. 1999). "This deferential standard means 'that the court has a range of choice, and its decision will not be disturbed as long as it stays within that range[,] is not influenced by any mistake of law' or fact, or makes a clear error of judgment in balancing relevant factors." Id. (quoting McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1403 (8th Cir. 1994)). In this case, we find no abuse of discretion in the district court's decision.

In their arguments for reversal, the appellants rely heavily upon Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). In Shelton, we cautioned against the potential problems caused by deposing opposing counsel and developed a three-prong test that a party must satisfy in order to depose the opposition's attorney. See id. at 1327. A party must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is

---

[3] Although the indemnification action is pending before the Nebraska District Court, the deposition subpoenas served on the LHDL attorneys were issued out of the Minnesota District Court because those attorneys reside in Minnesota. Thus, the motion to quash was properly before the Minnesota District Court. See Fed. R. Civ. P. 45.

relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." Id. This difficult burden imposed by Shelton was intended to guard against the "harassing practice of deposing opposing counsel ... that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." Id. at 1330.

In Shelton, the plaintiffs brought suit against an automobile manufacturer seeking to recover on theories of strict liability, negligence, and failure to warn when their child was killed in a rollover accident. Id. at 1324. The plaintiffs' attorney deposed the defendant's attorney to determine whether the defendant possessed documents concerning testing done on the vehicle in question. Id. at 1327. Defense counsel refused to answer many of the questions posed to her concerning the open and on-going litigation, citing both the attorney-client privilege and the work product doctrine. Id. at 1325. The defense did offer to produce other, non-lawyer witnesses to answer the plaintiff's questions. Id. at 1327. Plaintiffs' counsel admitted that he asked these questions to determine whether the defendant had in fact truthfully complied with his document requests and interrogatories. Id. at 1327. Plaintiffs' counsel was not seeking to discover information uniquely possessed by opposing counsel and central to the litigation, but rather was attempting to confirm the information he had already received.

We held in Shelton that requiring the attorney to answer the questions posed to her regarding the existence of certain documents would require her to reveal her mental selective process. See id. at 1329. From this information, her opponent could infer that since she remembered the existence of a particular document, the document may be sufficiently important that she may be relying on it in preparing her client's case. See id. In document intensive cases, "the selection and compilation of documents is often more crucial than legal research." Id.(citation omitted). Therefore, because the answers to the questions could have in essence revealed the

attorney's litigation strategy, we held that the information sought was protected by the work product privilege. See id.

The instant case involves two separate actions, one of which is completely concluded, i.e., the patent infringement case, and the second of which is currently pending and gave rise to this appeal, i.e., the indemnification case. The District Court properly applied Shelton to the pending indemnification case and denied Dynasty access to records involving the LHDL attorneys' representation of Pamida in the on-going indemnification case. Shelton, however, does not apply to the concluded patent infringement action.

The Shelton test was intend to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. See id. at 1329. Because this abuse of the discovery process had become an ever increasing practice, this Court erected the Shelton test as a barrier to protect trial attorneys from these depositions. See id, at 1327. But Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case. Therefore, the Shelton test applies only to the instant case, not to the concluded case. Dynasty need not satisfy Shelton to depose the LHDL attorneys regarding information involving the concluded patent infringement case.

Dynasty is primarily seeking information regarding the concluded patent infringement case, not the pending indemnification action. Furthermore, Dynasty is seeking to depose opposing counsel to discover information peculiarly within counsel's knowledge and centrally relevant to the issues in the indemnification

action, i.e., whether the $750,000 in attorneys' fees incurred in defending the patent infringement action was reasonable and what action was taken to notify Dynasty of the patent infringement action and Pamida's claim for indemnification. In such circumstances, deposing opposing counsel may not only be the most expedient approach, but the only realistically available approach. The concerns raised in Shelton regarding abuse of the discovery process and adding time and expense to litigation are not implicated in this case where Dynasty seeks relevant information uniquely known by Pamida's attorneys about prior terminated litigation, the substance of which is central to the pending case. Expediency, however, is not our only concern. Although Shelton does not control in this case, Dynasty still must demonstrate that there has a been a waiver of the attorney-client privilege and that the work product privilege has either been waived or that the standard of the Federal Rule of Civil Procedure 26(b)(3) has been satisfied.

Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases. Both parties agree that Nebraska law controls the issue of waiver of attorney-client privilege in this case.[4] Under Nebraska law, an implied waiver of the attorney-client privilege occurs when "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his

---

[4] The magistrate judge applied the common law doctrine of implied waiver from Ideal Electronic Security Co., Inc v. International Fidelity Insurance Co., 129 F.3d 143, 151 (D.C. Cir. 1997) to find waiver of the attorney-client privilege. Although the magistrate judge applied the incorrect standard, the decision reached was the correct decision had the proper standard been applied. Therefore, the magistrate judge's decision will be upheld. See Zirinsky v. Sheehan, 413 F.2d 481, 484 n.5 (8th Cir. 1969)("if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.")(quoting Helvering v. Gowran, 302 U.S. 238 (1937)).

defense." League v. Vanice, 374 N.W.2d 849, 856 (N.E. 1985)(citations omitted). Here, Pamida instituted this action by filing a lawsuit for indemnification seeking recovery for legal expenses thereby putting the work of its attorneys directly at issue in the case. Application of the privilege under these circumstances would deny Dynasty access to vital information peculiarly possessed by the attorneys necessary to defend against Pamida's claims. In such circumstances, Pamida has waived the protection of the attorney-client privilege.

The work product privilege extends beyond the termination of litigation. See In re Murphy, 560 F.2d 326, 334 (8th Cir. 1977). Thus, unless the privilege has been waived or the requirements of Federal Rule of Civil Procedure 26(b)(3) satisfied, the work product privilege would protect much of the information Dynasty seeks to gain from Pamida's counsel. Because we find that Pamida has waived the work product privilege in this case, we need not address whether the Rule 26(b)(3) standard of substantial need an undue hardship has been shown by Dynasty.

The work product privilege is not absolute and may be waived. See United States v. Nobles, 422 U.S. 225, 239 (1975); see also In re Chrysler Motors Corp. Overnight Evaluation, 860 F.2d 844 (8th Cir. 1988). This court has recognized that the privilege should be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997). The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute. See Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). In the instant case, that balance weighs on the side of disclosure, and this Court holds that Pamida impliedly waived the work product privilege by bringing the indemnification action in which the information allegedly protected is crucial and unavailable by other means.

With respect to the issue of implied waiver, the Court must not only look at whether Pamida intended to waive the privilege, but also whether the interests fairness and consistency mandate a finding of waiver. See Wigmore, Evidence in Trial at Common Law, § 2327 at 636. (J. McNaughton rev. 1961). "When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way." In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982).

Here, the privilege must give way. The information sought from Pamida's counsel involves the crucial issues in the indemnification action, i.e., the nature of the work the attorneys performed in the patent infringement action, what actions were taken by Pamida to notify Dynasty of the patent infringement action and of Pamida's claim for indemnification, and whether the $750,000 incurred in attorneys' fees was reasonable. Fairness requires that the work product privilege must give way to Dynasty's right to investigate the facts underlying Pamida's claim and to mount a defense against that claim. Absent implied waiver, Dynasty would be denied access to critical information, known only to the LHDL attorneys. When Pamida instituted this indemnification action seeking to recover in excess of $1.2 million, of which $750,000 constitutes attorneys' fees, it clearly placed the work of its attorneys squarely at issue and thereby waived the work product privilege.

The final issue before this Court involves the scope of the lower court's ruling. Pamida and the LHDL attorneys argue that the district court abused its discretion in ruling on the LHDL attorneys' obligation to produce certain documents subpoenaed by Dynasty. They argue that this issue was not properly before the district court because they had served written objections to the document requests. But it was Pamida and the LHDL attorneys that moved to quash the subpoenas in their entirety. Furthermore, Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure provides that "[i]f objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials ... except pursuant to an order of the court by which the

subpoena was issued." Here, the subpoenas were issued by the Minnesota District Court so it was proper for that court to rule on the motion to quash with respect to those subpoenas and the document requests attached thereto.

III

Based on the foregoing, we hereby affirm the district court's ruling.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.