**ALCON LABORATORIES, INC. and Alcon Manufacturing, Ltd., Plaintiffs,**

v.

**PHARMACIA CORPORATION, Pharmacia & Upjohn Company, and the Trustees of Columbia University in the City of New York Defendants.**

**No. 01 Civ. 2989(WHP).**

United States District Court, S.D. New York.

Aug. 2, 2002.

Daniel J. Thomasch, Orrick, Herrington & Sutcliffe LLP, New York City, for Plaintiffs.

Elizabeth Jean Holland, Kenyon & Kenyon, New York City, for Defendant Pharmacia Corporation.

Jack B. Blumenfeld, Maryellen Noreika, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendant Pharmacia Corporation.

John P. White, Peter D. Murray, Cooper & Dunham LLP, New York City, for the Trustees of Columbia University.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiffs Alcon Laboratories, Inc. and Alcon Manufacturing, Ltd. (collectively "Alcon") filed this action against defendants Pharmacia Corporation and Pharmacia & Upjohn Company (collectively "Pharmacia") and the Trustees of Columbia University ("Columbia"), seeking a declaratory judgment that their glaucoma treatment product, marketed under the brand-name Travatan, does not infringe on U.S. Patent No. 4,599,353 (the " '353 patent") and that the '353 patent is invalid. The '353 patent, which was issued in 1986, is owned by Columbia and exclusively licensed to Pharmacia. It covers the use of prostaglandins for treating glaucoma.

Columbia moves for a protective order quashing a subpoena and precluding the deposition of John P. White, Esq., its lead trial counsel and the lawyer responsible for the prosecution of the '353 patent for Columbia over twenty years ago. For the reasons set forth below, Columbia's motion is denied in its entirety.

Alcon subpoenaed White for a deposition on issues concerning inventorship of the '353 patent and representations made to the Patent and Trademark Office ("PTO"), including White's written argument submitted to the PTO. Alcon contends that White's testimony is relevant and crucial to its inequitable conduct defense concerning inventorship as that defense is predicated on multiple events, most or all of which involve White as a participant or possible percipient witness.

■ The Federal Rules of Civil Procedure do not prohibit the deposition of an opposing counsel, yet they are strongly disfavored. *See United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991); *see also Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary."); *Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 n. 2 (2d Cir.1987) (noting that it is generally well regarded that the tactic of seeking discovery from adversary counsel is disfavored, but is not a talisman for the resolution of all controversies of this nature).

> This presumption is based on the recognition that even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation.... Nevertheless, depositions of opposing counsel are not categorically barred. Rather, the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself.

*Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y.2001). In *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.

1986), the Eighth Circuit held that deposing opposing counsel "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (citations omitted).

Although the Second Circuit has not expressly adopted the *Shelton* standard, it expressed agreement with the principles expressed by the Eighth Circuit. *See Yonkers Bd. of Educ.*, 946 F.2d at 185; *Gould*, 825 F.2d at 680 n. 2. Further, the *Shelton* test has been widely followed by district courts in this Circuit. *See, e.g., Madanes*, 199 F.R.D. at 151; *Maher v. Monahan*, No. 98 Civ. 2319(JGK)(MHD), 2000 WL 777877, at *3–4 (S.D.N.Y. June 15, 2000); *U.S. Fidelity & Guar. v. Braspetro Oil Services Co.*, Nos. 97 Civ. 6124(JGK)(THK), 98 Civ. 3099(JGK)(THK), 2000 WL 1253262, at *1 (S.D.N.Y. Sept. 1, 2000); *Pereira v. United Jersey Bank*, Nos. 94 Civ. 1565(LAP), 94 Civ. 1844(LAP), 1997 WL 773716, at *7–8 (S.D.N.Y. Dec. 11, 1997); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 594 (N.D.N.Y.1989).

Columbia contends that the practice of deposing opposing party's attorneys is decried absent some showing of "compelling need," and that Alcon has failed to satisfy the prerequisite compelling need for White's deposition established in *Shelton*. Columbia argues that "the mere request to depose a party's attorney constitutes good cause for obtaining a protective order." *N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, 85 (M.D.N.C.1987).

Alcon responds that *Shelton* is inapplicable here because the Eighth Circuit limited that holding in *Pamida, Inc. v. E.S.*

*Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002). In *Pamida* the Eighth Circuit held that

> [t]he Shelton test was intended to protect against the ills of deposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.... But Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial.

*Pamida*, 281 F.3d at 730. The Eighth Circuit further noted that protection for opposing counsel "only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case. Therefore, the *Shelton* test applies only to the instant case, not to the concluded case." *Pamida,* 281 F.3d at 730. Thus, Alcon contends, *Shelton* is inapposite where an attorney representing a client in a completed case also happens to represent that same client in a subsequent case where the information known only by the attorney regarding the prior concluded case is crucial. This Court need not address whether *Pamida* effectively limits *Shelton* to cases where the subject matter of the testimony sought is the subject matter underlying the instant case because Columbia's application fails even when *Shelton* is applied.

■ Under *Shelton*, Alcon must show that no other means exist to obtain the information it seeks other than to depose opposing counsel, and that the information sought is relevant, non-privileged and crucial to its case. *Shelton*, 805 F.2d at 1327. Here, Alcon seeks information concerning the prosecution history and inventorship of the '353 patent, as well as documents filed with the PTO on behalf of Columbia.

White was the lead counsel for the prosecution of the '353 patent. His name is the only one that appears on the face of the patent as an attorney. Thus, White is likely the only source for much of the information Alcon seeks and the best source of the rest of the requested information because of his role in the prosecution of the patent. *See Calvin Klein Trademark Trust v. Wachner*, 124 F.Supp.2d 207, 211 (S.D.N.Y.2000) ("But here, it is obvious that the ... lawyer ... is in a far better position than anyone else to testify as to exactly what he and his colleagues stated."); *United States Fidelity & Guaranty*, 2000 WL 1253262, at *4 ("In any event, the [party seeking discovery is] entitled to question the direct participants ... rather than being forced to attempt to glean information from secondhand sources."). Moreover, Alcon need not exhaust every available avenue for the testimony, especially since certain information is exclusively within White's knowledge and interrogatories are arguably unavailable since White is not a party to this action. *See* Fed.R.Civ.P. 33; *see also United States Fidelity & Guaranty*, 2000 WL 1253262, at *4 ("In this case, the Court is of the view that written questions and interrogatories would be an extremely cumbersome and ineffective discovery technique.").

■ While an attorney's deposition should be precluded when there are other persons available to testify as to the same information or if interrogatories are available, deposing White is the only practical avenue here. *See, e.g., N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C.1987) ("If there are other persons available who have the information, they should be deposed first. Also other methods, such as written interrogatories which do not involve the same dangers as an oral deposition, should be

employed."); *Pereira v. United Jersey Bank,* Nos. 94 Civ. 1565(LAP), 94 Civ. 1844(LAP), 1997 WL 773716, at *7–8 (S.D.N.Y. Dec. 11, 1997) ("In addition, the [party seeking discovery] has not demonstrated that it has exhausted other methods of discovery."). As previously noted, White is not subject to interrogatories under the Federal Rules since he is not a party to this action. *See* Fed.R.Civ.P. 33. Further, the prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action. *Environ Products, Inc. v. Total Containment, Inc.,* 41 U.S.P.Q.2d 1302, 1306 (E.D.Pa.1996) ("The affirmative defense of inequitable conduct makes [the attorney's] mental impressions during the reexamination proceedings an issue in this litigation."). White's mental impressions during the patent prosecution period are at issue in this matter due to Alcon's inequitable conduct defense. Accordingly, White's mental impression relevant to this issue can only be discovered directly from him. *See Environ,* 41 U.S.P.Q.2d at 1306. Moreover, Columbia's choice of White as trial counsel, with the knowledge that he was the lead prosecuting attorney for the patent, cannot shield his deposition.

Columbia maintains that the information sought by Alcon is privileged or protected by the attorney work-product doctrine. It argues that much of the information sought concerns White's mental impressions regarding the prosecution of the '353 patent, which are inextricably intertwined with his and Columbia's trial strategies in this and other actions involving the '353 patent. In support of this argument, Columbia emphasizes that White avers in a declaration that he has no recollection about the information Alcon seeks outside of his involvement as trial counsel in the litigations concerning the '353 patent. Columbia also disputes that neither its claims nor Dr. Bito's testimony at deposition,

have effectively waived the attorney-client privilege.

"[T]he Court cannot rule in a vacuum, prior to the deposition, that every question to be asked will seek to elicit privileged information." *In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 429, 438 (E.D.Pa.1981); *accord Evans v. Atwood,* No. Civ. 96–2746(RMU), 1999 WL 1032811, at *5 (D.D.C. Sept.29, 1999) ("[T]he court cannot say that the plaintiffs cannot ask [the witness] *any* questions which are reasonably likely to lead to the discovery of non-privileged admissible evidence."). Thus, this Court will reserve decision on the disputed assertions of privilege until the privilege has been asserted at a deposition or on a privilege log, and the issue is then ripe for consideration.

Moreover, White's declaration asserting his lack of non-privileged or non-protected information is not dispositive of the issue of whether he should be subject to a deposition, since "[t]here is a basis ... for the position that an attorney cannot avoid a deposition by asserting that he or she has no relevant, nonprivileged information, and that at a minimum, the attorney must submit to a deposition so that his lack of knowledge may be tested and any claimed privilege placed on the record." *Niagara Mohawk Power Corp.,* 125 F.R.D. 578, 594 (N.D.N.Y.1989).

While the Court is mindful of Columbia's concerns regarding the deposition of its trial counsel in this and several other actions involving the '353 patent, a patent prosecution attorney cannot avoid being deposed simply because he is later selected to act as trial counsel in an infringement action concerning the very patent he helped to prosecute. The retention of the same counsel to serve as both a prosecuting attorney for its patent and trial counsel in an action involving the validity of that patent presents a Hobson's choice to any

litigant. Columbia chose White and his firm to represent it in a proceeding involving the validity of the '353 patent—the very patent that Columbia retained White and his firm to prosecute on its behalf years earlier.

Further, Columbia presents no evidence, nor has this Court found any, that Alcon subpoenaed White for nefarious reasons. Alcon subpoenaed White because they believe he has personal knowledge of information crucial to its inequitable conduct defense. This lack of bad faith quells many of the fears that routinely plague courts faced with the issue of attorney depositions, and supports the denial of a protective order.

### CONCLUSION

Accordingly, Columbia's motion for a protective order and an order quashing the subpoena directed to John P. White, Esq. is denied.

SO ORDERED: