# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1251

_____

Todd Smith-Bunge

*Plaintiff - Appellant*

v.

Wisconsin Central, Ltd., a corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2019
Filed: December 27, 2019

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Wisconsin Central, Ltd. terminated Todd Smith-Bunge. He sued for unlawful retaliation under the Federal Railroad Safety Act. **49 U.S.C. § 20109**. The district

court[1] granted summary judgment to Wisconsin Central. Smith-Bunge appeals that decision and two discovery rulings. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In 2013, Wisconsin Central suspended Smith-Bunge. He sued for unlawful retaliation under the FRSA. He prevailed on summary judgment on October 8, 2014. *Smith-Bunge v. Wisconsin Central, Ltd.*, 60 F. Supp. 3d 1034 (D. Minn. 2014). Three weeks earlier, Smith-Bunge inspected his truck for faulty brakes. Later, he accidentally drove his vehicle into a train's path despite knowing the train had been cleared to continue on the tracks. After the accident, he completed an injury report, writing that his truck's brakes malfunctioned, causing the crash. Wisconsin Central hired an expert, Michael W. Rogers, to investigate Smith-Bunge's vehicle. Rogers found that the brakes allowed Smith-Bunge to stop. He concluded Smith-Bunge was the sole cause of the crash. Wisconsin Central terminated Smith-Bunge for violating four rules: safety; alert and attentiveness; alert to train movement; and furnishing true information.

Smith-Bunge sued for unlawful retaliation, arguing Wisconsin Central retaliated against him for three acts: his 2013 lawsuit, his 2014 report of faulty brakes, and his 2014 report of injury. The district court granted Wisconsin Central summary judgment, concluding Smith-Bunge failed to make a prima facie case.

Smith-Bunge appeals the summary judgment. He also challenges the district court's denial of his motion to compel testimony from Rogers and its grant of Wisconsin Central's motion for protective order for its counsel, Constance Valkan. This court reviews for abuse of discretion a district court's discovery rulings. *See Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1202 (8th Cir. 2015).

---

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

I.

Smith-Bunge sought the draft drawings of the accident scene and draft expert reports by Michael Rogers, the crash expert hired by Wisconsin Central. Smith-Bunge also sought Rogers's communications with Wisconsin Central's counsel, Julius Gernes.

Smith-Bunge acknowledges that an expert's materials are protected under Federal Rule of Civil Procedure 26(b)(4). *See* **Fed. R. Civ. P. 26(b)(4)(B), (C)** (protecting "drafts of any report or disclosure required" of an expert as well as "communications between the party's attorney and any [expert] witness"). He argues that Rogers is not an expert witness but only an ordinary witness.

If an expert's "information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit . . . [the witness] should be treated as an ordinary witness." **Fed R. Civ. P. 26(b)(4), advisory committee's note to 1970 Amendments**. On September 19, 2014, a day after the crash, Smith-Bunge's counsel asked Wisconsin Central to place a litigation hold. A month later, Wisconsin Central retained Rogers to provide "litigation support." Rogers then investigated the crash and prepared recommendations. The district court did not abuse its discretion in concluding Rogers acquired the information in preparation for trial, so he was an expert witness whose work is protected under Rule 26(b)(4). *See **Simon v. G.D. Searle & Co.**, 816 F.2d 397, 401 (8th Cir. 1987), quoting **8 C. Wright and A. Miller, Federal Practice and Procedure § 2024**, at 198-99 (1970) ("[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").

II.

The district court did not abuse its discretion in blocking a deposition of Wisconsin Central's counsel, Constance Valkan, about her conversations with other employees and whether Smith-Bunge's employment record caused his termination.

Smith-Bunge believes the district court should have applied this court's test from *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002). *Pamida* permits deposing an opposing counsel if a party "seeks relevant information uniquely known by [the] attorneys about prior terminated litigation, the substance of which is central to the pending case." *Id.* at 731. *Pamida*, an indemnification lawsuit, addressed two questions: were the prior case's attorneys' fees reasonable, and what actions did counsel take in the prior case to provide indemnification notice to plaintiff? *Id.* Both answers were "peculiarly within counsel's knowledge." *Id.* Further, the party seeking recovery for legal expenses put the attorneys' work "directly at issue," which waived attorney-client privilege. *Id.* Smith-Bunge, on the other hand, wants to discover whether Valkan spoke with other Wisconsin Central employees about Smith-Bunge's 2013 lawsuit and whether his prior suspension motivated his termination. Neither piece of information is peculiarly within counsel's knowledge, nor did Wisconsin Central waive privilege. *Pamida* does not apply here.

Instead, *Shelton* applies. *See **Shelton v. American Motors Corp.***, 805 F.2d 1323 (8th Cir. 1986). A party may depose an opposing counsel if the information sought is: (1) not available through other means; (2) relevant and nonprivileged; and (3) crucial to the preparation of the case. *Id.* at 1327.

Smith-Bunge does not meet the first and second factors. First, he had other means to discover whether Valkan spoke with other employees and whether a past suspension motivated the termination. As the district court found, he could ask other employees. Smith-Bunge suspects that because other employees had "selective amnesia" during their depositions, he needs to depose Valkan. To the contrary, a party cannot depose opposing counsel to explore suspicions about opposing witnesses. *See Shelton*, 805 F.2d at 1327-28 (rejecting deposition where "plaintiffs' counsel indicated that he was asking [counsel] these questions to determine whether [defendant] had in fact truthfully and fully complied with his document requests and interrogatories").

Second, the information is privileged. Smith-Bunge does not identify any statements from Valkan outside of the attorney-client privilege. Nor does he attempt to narrow his inquiry to respect the privilege. He argues this case is like prior cases attaching no privilege when an attorney "act[ed] merely as a conduit for the client's funds; as a scrivener for the client; or as a business adviser." *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (citations omitted). Valkan swore: all of her "communications with Wisconsin Central's managers have been strictly in my capacity as counsel for Wisconsin Central for the purpose of providing legal advice"; she provides legal advice regarding employment-related issues; and she does not make business decisions. Smith-Bunge does not provide facts that counter this testimony or characterize Valkan as a conduit of funds, a scrivener, or a business adviser. *Cf. Horvath*, 731 F.2d at 561 (not applying attorney-client privilege when attorney admitted "he functioned primarily as a courier" of illegally-obtained funds and performed such acts prior to passing bar examination); *Simon*, 816 F.2d at 402-04 (upholding denial of privilege to documents that did not seek legal advice, but were provided to counsel).

The district court did not abuse its discretion in granting Wisconsin Central's motion for a protective order.

## III.

This court reviews de novo a district court's grant of summary judgment viewing genuinely disputed facts "in the light most favorable to the nonmoving party." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), *quoting Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Torgerson*, 643 F.3d at 1042, *citing Ricci*, 557 U.S. at 586.

The district court properly granted summary judgment to Wisconsin Central because Smith-Bunge did not make a prima facie case of retaliation under the FRSA. He did not show "the circumstances raise an inference that the protected activit[ies] [were] a contributing factor in [his termination]." *Blackorby v. BNSF Railroad Co.*, 849 F.3d 716, 720 (8th Cir. 2017), *quoting Kuduk v. BNSF Railroad Co.*, 768 F.3d 786, 789 (8th Cir. 2014).

"[T]he contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." *Kuduk*, 768 F.3d at 791. *See also Blackorby*, 849 F.3d at 722 (the "essence" of FRSA is "discriminatory animus"). "[A plaintiff] therefore must demonstrate more than a mere factual connection between his [protected activity] and his discipline in order to establish a prima facie case under the contributing-factor standard." *Heim v. BNSF Ry. Co.*, 849 F.3d 723, 727 (8th Cir. 2017).

Smith-Bunge does not raise an inference of intentional retaliation prompted by any of his three acts: (1) filing the 2013 lawsuit, (2) reporting the injury from the 2014 collision, and (3) reporting the brake failure that caused the 2014 collision. In fact, his briefing does not mention the *Kuduk* "intentional retaliation" standard.

Further, no reasonable fact finder could infer a retaliatory motive. For the 2013 litigation, Smith-Bunge emphasizes two facts: six days after he won summary judgment, Wisconsin Central hired Rogers to investigate the 2014 collision, and Wisconsin Central did not terminate workers involved in other accidents. Hiring Rogers to investigate the accident, by itself, does not indicate animus or intentional retaliation. The short lapse between Smith-Bunge's success in summary judgment and Rogers's hiring is insufficient. *See Kuduk*, 768 F.3d at 792. The 2013 litigation—involving a prior suspension—"was completely unrelated" to the 2014 crash, so the crash is an "intervening event that independently justified" his termination. *Id.* For the differential treatment, Smith-Bunge does not provide enough details about the other crashes to determine if they were of the same magnitude. Critically, based on the facts he furnishes, none of the workers in the other crashes provided false information (as Smith-Bunge did).

For the 2014 reporting of injury and brake failure,[2] Smith-Bunge produces no evidence of retaliatory motive. He relies on testimony from two Wisconsin Central employees that if he had not falsely reported the brake failure, he would not have violated the rule to furnish true information and, therefore, possibly not been terminated. He concludes from this testimony that his act of reporting caused the

---

[2] Smith-Bunge erroneously argues that Wisconsin Central moved for summary judgment as to his prior litigation, but not his other two acts. In its motion to the district court, Wisconsin Central listed all three acts, arguing he failed to show any act was a contributing factor to his termination.

termination. It did not. His *falsehoods* in the report, substantiated by Rogers's examination of his truck's brakes after the crash, contributed to his termination.

Smith-Bunge did not make a prima facie case of retaliation under the FRSA.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____