UNITED STATES of America, Plaintiff,

v.

PHILIP MORRIS INCORPORATED, et al., Defendants.

No. Civ.A. 99–2496(GK).

United States District Court, District of Columbia.

Aug. 23, 2002.

**14**

J. Patrick Glynn, U.S. Department of Justice, Sharon Y. Eubanks, U.S. Department of Justice, Civil Division/Torts Branch, Washington, DC, for plaintiff.

Murray R. Garnick, Leslie Wharton, Peter Thomas Grossi, Jr., Michael R. Geske, Jonathan Louis Stern, Stacy J. Pollock, James Miller Rosenthal, Amy Elizabeth Ralph, Jeanna Maria Beck, Floyd E. Boone, Jr., Kevin M. Green, Ryan David Guilds, Melissa L. Marglous, Amy L. McGinnis, Nick Malhotra, Anne McBride Walker, Seth Barrett Tillman, Sharma Jnatel Simmons, Duane J. Mauney, Susan Louise Lyndrup, Kendall Millard, Arnold & Porter, Washington, DC, Cynthia S. Cecil, Hunton & Williams, Richard, VA, Timothy M. Broas, Seyfarth Shaw, Washington, DC, Erik D. Nadolink, Hunton & Williams, Richmond, VA, Dan K. Webb, Bradley E. Lerman, Ricardo E. Ugarte, Kevin J. Narko, Luke A. Palese, Jeffrey Wagner, Winston & Strawn, Chicago, IL, Herbert M. Wachtell, Ben M. Germana, Steven M. Barna, Jeffrey M. Wintner, Wachtell, Lipton, Rosen & Katz, New York City, C. Ian Anderson, Davis, Polk & Wardell, New York City, Robert M. Rader, Thomas M. Stimson, Winston & Strawn, Washington, DC, for Philip Morris Inc.

Paul Sommer Ryerson, Peter John Biersteker, Robert Francis McDermott, Jr., Jonathan M. Redgrave, Patrick L. Hubbard, Geoffrey T. Wright, Jones, Day, Reavis & Pogue, Washington, DC, Scott C. Walker, Elizabeth P. Kessler, Jones, Day, Reavis & Pogue, Columbus, OH, Robert C. Weber, Paul Crist, David B. Alden, Randal S. Baringer, Jones, Day, Reavis & Pogue, Cleveland, OH, John Buchanan Williams, William M. Bailey, Collier Shannon Scott, PLLC, Washington, DC, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA, Minneapolis, MN, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston–Salem, NC, Ivan C. Smith, Jones, Day, Reavis & Pogue, Columbus, OH, Robert M. Rader, Washington, DC, Harold K. Gordon, Jones, Day, Reavis & Pogue, New York City, for R.J. Reynolds Tobacco Company.

William Charles Hendricks, III, Andrew Martin McCormack, King & Spalding, Washington, DC, David M. Bernick, Kirkland & Ellis, Chicago, IL, Leign Ann Dowden, Dan H. Willoughby, King & Spalding, Atlanta, GA, Dawn D. Marchant, Kenneth N. Bass, Karen McCartan DeSantis, Jason Beckerman, David Mendelson, David Sullivan, Kirkland & Ellis, Washington, DC, Rebecca I. Ruby, Goodwin & Procter, L.L.P., Washington, DC, Stephen R. Patton, Kirkland & Ellis, Chicago, IL, Douglas G. Smith, Michelle H. Browdy, Deirdre A. Fox, Steven D. McCormick, Kirkland & Ellis, Chicago, IL, Robert M. Rader, Washington, DC, for Brown & Williamson Tobacco Corp.

Matthew David Schwartz, Edward Craig Schmidt, Thompson Coburn, LLP, Washington, DC, Paige Q. Szajnuk, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, Richard Paul Cassetta, James M. Cox, Thompson & Coburn, LLP, St. Louis, MO, Michael B. Minton, Thompson Coburn LLP, St. Louis, MO, Robert M. Rader, Washington, DC, J. William Newbold, Thompson Coburn LLP, St. Louis, MO, for Lorillard Tobacco Company.

Warren Neil Eggleston, Michael P.A. Cohen, Washington Lawyers' Committee, Washington, DC, Kenneth Anthony Gallo, Fred W. Reinke, Clifford, Chance, Rogers & Wells, LLP, Washington, DC, Aaron H. Marks, Marc E. Kasowitz, Daniel R. Benson, Nancy E. Straub, Leonard A. Feiwus, Kasowitz, Benson, Torres Friedman, L.L.P., New York City, Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, Robert M. Rader, Washington, DC, for The Liggett Group, Inc.

Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Washington, DC, Mary Elizabeth McGarry, Simpson, Thatcher & Bartlett, Michael V. Corrigan, Simpson, Thatcher & Bartlett, Demetra Frawley, Simpson, Thatcher & Bartlett, New York

City, Robert M. Rader, Washington, DC, for British American Tobacco, P.L.C.

William Salvatore D'Amico, Chadbourne & Parke, Washington, DC, Timothy M. Hughes, Garyowen P. Morrisroe, F. John Nyhan, Chadbourne & Parke, New York City, Robert M. Rader, Washington, DC, Bruce G. Sheffler, Chadbourne & Parke LLP, New York City, for British American Tobacco (Investments) Ltd.

Steven S. Michaels, Kevin C. Lombardi, Debevoise & Plimpton, Washington, DC, Judah Best, Bruce G. Merritt, Debevoise & Plimpton, Robert M. Rader, Washington, DC, Joseph P. Moodhe, Dennis H. Hranitzky, David Runtz, Debevoise & Plimpton, New York City, for Council for Tobacco Research–USA, Inc.

John Vanderstar, Keith Allen Teel, James Alexander Goold, Joseph A. Kresse, Clausen Jr. Ely, Covington & Burling, Robert M. Rader, Washington, DC, for Tobacco Institute, Inc.

### MEMORANDUM OPINION

KESSLER, District Judge.

On May 21, 2002, Special Master Levie issued Report and Recommendation # 50 ("R & R # 50"), recommending that the Court grant without prejudice the motion of Philip Morris Incorporated ("PM") to preclude the deposition of its Senior Vice President and General Counsel, Denise Keane. On May 24, 2002, the Special Master issued Report and Recommendation # 53 ("R & R # 53"), recommending that the Court quash the deposition notices of three in-house counsel to R.J. Reynolds Tobacco Company ("Reynolds"), namely Charles A. Blixt, Guy M. Blynn, and Daniel W. Donahue, and that the Court deny Reynolds' request for an order governing attorney depositions.

The United States objects to R & R # 50 and R & R # 53's recommendation that the Court quash the three deposition notices of Reynolds. Upon consideration of R & R # 50 and # 53, the Objections filed by the Government, the Opposition of PM and Reynolds, the applicable case law, and the entire record herein, the Court concludes that the Government's Objection are **sustained.**

### I. BACKGROUND

The parties all agree that the Government is seeking to depose Ms. Keane and Messrs. Blixt, Blynn and Donahue as fact witnesses only, about, *inter alia,* non-privileged information relating to "public relations," "corporate conduct and positions," marketing strategies, tobacco research and development, and the Master Settlement Agreement.[1]

In R & R # 50, the Special Master found that before the deposition of an attorney employed by the opposing party could be taken—no matter what the subject matter— Plaintiff must meet the three requirements crafted by the Eight Circuit in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986). These requirements are that: "(1) no other means exists to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Id.* at 1327.

The Special Master found that these requirements apply regardless of whether the attorney employed by the opposing party is trial counsel or in-house counsel, and regardless of whether they are being deposed about legal activities or business, marketing or research activities. *See* R & R # 50 at 3. Concluding that the Government failed to meet these requirements for Ms. Keane and Messrs. Blixt, Blynn, and Donahue, the Special Master recommended that the Govern-

---

1. Specifically, the Government contends that it seeks to depose Ms. Keane about "public relations" and "corporate conduct and positions" for Philip Morris; Mr. Blixt about his work with Reynolds' Research and Development division, "where he was exposed to if not involved in the processes of cigarette design and product evaluation"; Mr. Blynn about his involvement with marketing and advertising, as well as with the Master Settlement Agreement compliance litigation, a defense in this action; and Mr. Donahue about pre-litigation facts, including his knowledge of readership data, advertising data, product placement, the CTR special projects, the Brubacher report, Dr. Anthony Colucci, the closure of the so-called mouse house, and smoking and health research performed by R.J. Reynolds.

ment be precluded from taking their depositions. *See* R & R # 53 at 11.

## II. STANDARD OF REVIEW

A district court reviews any factual findings by a Special Master for clear error. Any legal conclusions and mixed questions of law and fact are reviewed *de novo*. Fed. R.Civ.P. 53(e)(2).

## III. ANALYSIS

### A. The Meaning of *Shelton*

*Shelton* provides the cornerstone for Defendants' argument and the reasoning of R & R # 50 and R & R # 53. The present dispute centers on whether Plaintiff needs to satisfy, before taking the depositions in issue, the three criteria identified by the Eighth Circuit. Defendants contend that the three criteria apply to any attempt to depose an attorney, without regard to the subject matter of the deposition or the attorney's role in the pending litigation. This is not only a misinterpretation of the holding in *Shelton* and the subsequent case law re-affirming that holding, but is contrary to the language and philosophy of the Federal Rules of Civil Procedure.

*Shelton* involved a suit against an automobile manufacturer in which parents sought damages for the death of their child, who was killed in a rollover accident. Plaintiff sought to depose opposing counsel defending the suit about her discovery preparation for that case, namely, about whether she possessed documents concerning testing done on the vehicle in question. Defense counsel refused to answer these questions, citing work product privilege. Plaintiff's counsel admitted that his sole purpose in asking these questions was to determine whether defendant's counsel had, in fact, truthfully complied with his document requests and interrogatories and to confirm the information he had already received. *Shelton*, 805 F.2d at 1327.

The district judge entered judgment against defendant as a sanction for counsel's failure to answer the deposition questions. The Eighth Circuit reversed and held that certain deposition *questions*, posed to trial counsel during her deposition relating to the existence or non-existence of documents, were barred because they were intended to compel her compliance with the interrogatories and discovery requests propounded to her.

As the Eighth Circuit summarized the case:

> The issue on appeal is whether a deponent's mere acknowledgment of the existence of corporate documents is protected by the work-product doctrine or the attorney-client privilege. We hold that where, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product.

*Id.* at 1326.

Thus, it is clear that the Eighth Circuit's holding was not nearly so sweeping as Defendants suggest. The Eighth Circuit did *not* state that depositions of all opposing counsel were presumptively barred ("We do not hold that opposing counsel is absolutely immune from being deposed." *Id.* at 1327.), nor even that trial counsel's deposition should not have been taken. Rather, it held that because responses to the particular questions asked would provide a road map of trial counsel's litigation strategy, her answers were protected by the work-product doctrine. *Id.* at 1326, 1329.

In *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726 (8th Cir.2002), the Eighth Circuit revisited the issue, albeit in a very different procedural posture. In that case, a retailer sued a manufacturer seeking indemnification for attorney's fees and costs incurred in defending an underlying, completed patent infringement suit. The court explained:

> We held in *Shelton* that requiring the attorney to answer the questions posed to her regarding the existence of certain documents would require her to reveal her mental selective process ... The *Shelton test was intended to protect against the ills of deposing opposing counsel in a pending*

*case which could potentially lead to the disclosure of the attorney's litigation strategy.* Because this abuse of the discovery process had become an ever increasing practice, this Court erected the *Shelton* test as a barrier *to protect trial attorneys from these depositions.* But *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. *In such circumstances, the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client [earlier].*

*Id.* at 730–31 (emphasis added).

Thus, *Pamida* makes clear that the three *Shelton* criteria apply to limit deposition questions of attorneys in only two instances: (1) when trial and/or litigation counsel are being deposed, and (2) when such questioning would expose litigation strategy in the pending case.

### B. The *Shelton* Factors Do Not Apply To This Case

There is no question that *Shelton* addressed a troubling and real-world discovery problem. However, this case is fundamentally different from *Shelton* in several crucial ways.

First, and most significantly, deponents are employees to whom Defendants have knowingly assigned substantial non-legal, non-litigation responsibilities, including corporate, business, managerial, public relations, advertising, scientific, and research and development responsibilities. Testimony on these subjects, to which Plaintiff is clearly entitled under the Federal Rules, is not subject to attorney-client or work-product privilege protections.

Second, in contrast to *Shelton*, Plaintiff is not seeking to depose counsel about the defense or litigation strategies related to this case. Plaintiff represents—and will be held to this representation—that it is only seeking testimony about non-privileged, pre-litigation factual matters separate and apart from Reynolds and PM's litigation strategy in this case.

For example, Ms. Keane is being deposed because she has held numerous high-level executive positions where she has been personally responsible for the development and control of Phillip Morris' policies, statements and conduct on smoking and health, nicotine and addiction, secondhand smoke, youth smoking, and scientific research and product development—areas that are germane to Plaintiff's claims that Defendants have denied the addictive properties of nicotine; marketed to children; understood the health hazards of smoking but avoided or delayed the development of less hazardous products; and avoided public scrutiny through the concealment of documents and research.[2]

Third, the principal rationales driving *Shelton* are not raised by the facts of this case. The animating concern of *Shelton* is

---

**2.** Similarly, Mr. Donahue is being deposed because, according to Plaintiff, he is a 25–year marketing veteran, with extensive pre-litigation knowledge concerning readership data, advertising data and product placement, the Tobacco Institute's activities, including research and lobbying agenda, the Council for Tobacco Research ("CTR") special projects, the Brubacher report, Dr. Anthony Colucci, the closure of the so-called mouse house, and smoking and health research performed by R.J. Reynolds. Ex. V ("Transcript of April 19, 2002 Meet and Confer") at 20–23; *see also* United States Opposition to Defendant R.J. Reynolds Motion For a Protective Order, at 6, Exs. 7, 8.

Mr. Blixt, who is currently Executive Vice President and General Counsel to Reynolds, is being deposed because of his work with research and development at Reynolds, where he was involved in the processes of cigarette design and product evaluation. He has also been the director and Vice–President of the company.

Mr. Blynn, Vice President and Deputy General Counsel and Secretary at Reynolds, is being deposed because of his knowledge of Master Settlement Agreement compliance, the Camel marketing campaign, other marketing strategies, and the Tobacco Institute's efforts regarding legislation about minors. *See* United States' Memorandum in Opposition to Defendant R.J. Reynolds Tobacco's Motion for a Protective Order, Exs. 3, 4, and 5.

that discovery rules must not be used—or abused—to "enable a learned profession to perform its functions ... on wits borrowed from the adversary." *Id.* at 1327 (quoting *Hickman v. Taylor,* 329 U.S. 495 at 516, 67 S.Ct. 385, 91 L.Ed. 451 (Jackson, J., concurring)). *Shelton* sought to prevent counsel from using the deposition of opposing trial counsel to "short-cut" the discovery rules: "counsel's tasks in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy." *Id.* at 1327. The facts of *Shelton,* unlike those here, presented a text-book example of that problem, as counsel was attempting to confirm compliance with discovery he had propounded to opposing trial counsel and seeking to obtain a preview of his opponent's litigation strategy.

Finally, unlike *Shelton,* the proposed deponents here are not litigation or trial counsel.

Despite the narrow holding of *Shelton* and the strikingly different facts of this case, Defendants contend that a spate of cases decided subsequent to *Shelton* support the view that the three *Shelton* criteria apply

whenever the propriety of an attorney deposition is in question. *See* R.J. Reynolds' Opp'n to Plaintiff's Objection to R & R # 53 ("Reynolds Opp'n") at 6–7.

In fact, a careful review of these cases reveals that the three criteria only apply to depositions of trial counsel—or counsel directly representing the party in the pending litigation—and then *only* if the deposition would reveal litigation strategy in the pending case.

Moreover, virtually every other Circuit case that Defendants claim support their sweeping view of *Shelton* in fact applied *Shelton* to limit depositions of *trial* counsel or counsel directly involved in representing a party in the case.[3]

Additionally, while several district courts in this Circuit have cited or relied on *Shelton,* they have never embraced Defendants' view that the *Shelton* criteria apply to all attorney depositions, without regard to the subject matter of the deposition or the deponent's role in the pending case.[4]

For all of the foregoing reasons, the Court concludes that the facts of this case do not come within the *Shelton* rubric and, therefore, its criteria do not apply. Moreover, the Court has found no precedent to support

---

3. *See, e.g., Nationwide Mut. Ins. Co., v. Home Ins. Co.,* 278 F.3d 621, 628–29 (6th Cir.2002) (district court did not abuse discretion in refusing to allow deposition of arbitrators and opposing trial counsel in ongoing case); *Thiessen v. GE Capital Corp.* 267 F.3d 1095, 1112 (10th Cir.2001) (no abuse of discretion as both parties agreed that *Shelton* applied to attorney who was both "corporate counsel and [ ] involve[d] as counsel in this case"); *Theriot v. Parish of Jefferson* 185 F.3d 477, 491 (5th Cir.1999), *cert. denied,* 529 U.S. 1129, 120 S.Ct. 2004, 146 L.Ed.2d 955 (2000) (no abuse of discretion for barring deposition of "defendants' trial attorneys"); *Boughton v. Cotter Corp.,* 65 F.3d 823, 830 (10th Cir.1995) (*Shelton* bars deposition of "outside counsel representing defendants in this matter"); *see also Gould Incorporated v. Mitsui,* 825 F.2d 676, 680 (2nd Cir.1987) (*Shelton* applies where concern is that the "thought processes of counsel in relation to pending or anticipated litigation would be exposed.").

4. For example, in *Corporation for Public Broadcasting v. American Automobile Centennial Commission,* 97–CV–01810, 1999 WL 1815561 (D.D.C. Feb.2, 1999), relied upon by Defendants,

the district court quoted *Shelton,* and denied without prejudice the request for the deposition of counsel, one of whom was trial counsel. The Court's denial had more to do with relevancy than *Shelton,* however; it emphasized that the alleged oral contract in dispute was actually negotiated by the principals not attorneys and that Defendant had no plans to call any counsel as witnesses. *Id.* at *2.

The other case in this district relied upon by Defendants, *Evans v. Atwood,* 96–2746, 1999 WL 1032811 (D.D.C.1999), actually allowed the deposition of an attorney employed by the defendant, on the grounds that the attorney was not "counsel of record" and therefore the *Shelton* "considerations ha[d] little force in the context of the instant case." *Id.* at *3.

Finally, several other cases in this district have found that opposing counsel may be deposed without the required *Shelton* showing. *See Amicus Communications v. Hewlett Packard Company,* 99–0284, 1999 WL 33117227 (D.D.C.1999) (opposing counsel could be deposed on non-privileged and factual material); *Sadowski .v. Gudmundsson,* 206 F.R.D. 25 (D.D.C.2002) (trial counsel may be deposed on non-privileged factual information).

Defendants' view that the three *Shelton* criteria apply to all attorney depositions.

## C. Defendants' Reading of *Shelton* Conflicts With the Federal Rules of Civil Procedure

Finally, it is important to emphasize that the Federal Rules of Civil Procedure create no special presumptions or exceptions for lawyers, or anyone else—even a sitting President of the United States.[5]

Defendants' broadbrush view of *Shelton* would allow parties to avoid discovery on subject matter that would otherwise be discoverable under the Federal Rules.

Rule 26(b)(1) generously permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Similarly, Rule 30(a)(1) liberally provides that a "party may take the testimony of any persons, including a party, by deposition upon oral examination." A party wishing to depose the opposing party's counsel must follow the same procedural rules as anyone else, and serve a Rule 45 subpoena on counsel for a deposition or production of documents.

Moreover, the Rules already have in place mechanisms for limiting any discovery that might cause "delay" or "harassment." For example, the Rules provide courts the discretion to limit pretrial discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(1). Similarly, any party wishing to oppose a deposition, such as Defendants, may follow the procedures set out in Rule 26(c) and obtain a protective order if they can demonstrate "good cause" as to why "justice requires [an order from the Court] protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Finally, under Fed.R.Civ.P.

30(d)(1), a party can instruct the deponent not to answer in order to preserve privilege objections for consideration by a judicial officer.

In short, the Federal Rules presume openness in discovery, and provide mechanisms for limiting it that apply equally to all. If the three *Shelton* criteria applied whenever the propriety of any attorney deposition was in issue, the presumption of discoverability in the Federal Rules would be turned upside down, requiring Plaintiff to prove the absence of what Defendants must show affirmatively in order to limit discovery. Moreover, it would allow Defendants to immunize themselves from discovery on key issues, by knowingly and strategically placing persons who happen to be attorneys in positions where they perform critical business, marketing, public relations, research, scientific and development duties.

Accordingly, for the foregoing reasons, the United States' objections are **sustained**. Given that Plaintiff has represented that it only seeks information about non-privileged, pre-litigation factual matters,[6] and not about Defendants' litigation strategy; and given that the attorneys being deposed are not trial counsel; the Court concludes that the Government need not satisfy the three *Shelton* criteria before the depositions of Ms. Keane and Messrs. Blynn, Blixt and Donahue can be taken.

---

**5.** *Clinton v. Jones,* 520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).

**6.** Plaintiff's representation about seeking non-privileged, pre-litigation information is fundamental to this Court's decision. The line between that information and attorney-client and work-product privileges should be clear to all counsel. The Court does not expect, and strongly discourages, additional motions practice over these privilege issues. As always, the Special Master's findings will be reviewed for clear error only.