Edison v. Acuity Healthcare Holdings, Inc., 2016 NCBC 82.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 15 CVS 2745 |

CARMITA A. EDISON,

        Plaintiff,

        v.

ACUITY HEALTHCARE HOLDINGS,
INC.; ACUITY HEALTHCARE, L.P.;
and MERCY RESTORATIVE CARE
HOSPITAL, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION ON DEFENDANTS ACUITY HEALTHCARE HOLDINGS, INC. AND ACUITY HEALTHCARE, L.P.'S MOTION FOR PROTECTIVE ORDER**

1.    THIS MATTER is before the Court on Defendants Acuity Healthcare Holdings, Inc. and Acuity Healthcare, L.P.'s (collectively, "Acuity") Motion for Protective Order ("Motion"), in which Acuity moves for a protective order under North Carolina Rule of Civil Procedure 26(c) to prevent Plaintiff from deposing Gwen Babson, who is both general counsel and vice president of compliance and risk management for Acuity. For the reasons stated below, the Motion is DENIED, and the deposition may proceed, consistent with this Order & Opinion.

*Maloney Law & Associates, PLLC, by Margaret Behringer Maloney, for Plaintiff Carmita A. Edison.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Parker R. Himes and Brandon M. Shelton, for Defendants Acuity Healthcare Holdings, Inc. and Acuity Healthcare, L.P.*

*Nexsen Pruet, PLLC, by C. Grainger Pierce, Jr., for Defendant Mercy Restorative Care Hospital, Inc.*

Gale, Chief Judge.

## I.   BACKGROUND

2.     Plaintiff Carmita A. Edison alleges that, from July 27, 2009, to August 8, 2014, she worked as a respiratory therapist and respiratory-care supervisor at Carolinas Specialty Hospital ("CSH"), a long-term acute-care hospital in Charlotte, North Carolina, where she was jointly employed by Acuity and Mercy Restorative Hospital, Inc. ("Mercy"). (Compl. ¶¶ 27–28.) According to Plaintiff, Mercy and Acuity "own or owned, control or controlled, and operate or operated [CSH]." (Compl. ¶ 6.)

3.     Plaintiff claims that her employment at CSH was wrongfully terminated after she filed a formal complaint with the North Carolina Respiratory Care Board on July 15, 2014, regarding poor patient care, wrong ventilator settings, false documentation, and management failures at CSH. (Compl. ¶¶ 91, 97.)

4.     Plaintiff filed the Verified Complaint in this matter on February 10, 2015, alleging claims of wrongful termination, negligent supervision, negligent retention, and negligent infliction of emotional distress. (Compl. ¶¶ 108–51.) Plaintiff later voluntarily dismissed all claims except her claim of wrongful termination in violation of public policy.

5.     On March 13, 2015, Acuity filed a notice of designation pursuant to N.C. Gen. Stat. § 7A-45.4(a)(1) (2015). The Chief Justice designated the case a mandatory complex business case on March 16, 2015, and the matter was assigned to the undersigned on March 18, 2015.

6.     The Motion arises as a result of Plaintiff's request to depose Ms. Babson. Ms. Babson is employed both as general counsel and as vice president of compliance

and risk management for Acuity. (Acuity's Mot. Protective Order ¶ 2.) In that role, Ms. Babson "provides general legal advice and counsel to Defendants and legal advice and counsel regarding legal compliance and management of legal risk." (Acuity's Mot. Protective Order ¶ 2.) It further appears, however, that Ms. Babson's responsibilities may include involvement in Acuity's business affairs.

7. In the March 11, 2016 deposition of Acuity's Rule 30(b)(6) designee, Gayle Long, vice president of human resources for Acuity, Ms. Long identified Ms. Babson as the person capable of answering questions on topics relevant to this dispute about which Ms. Long had no knowledge. (Pl.'s Mem. Opp'n Acuity's Mot. Protective Order Ex. E.) For example, Ms. Long testified that Ms. Babson is the person at Acuity responsible for the relationship with the vendor that manages Acuity's Healthcare Ethics and Compliance Hotline. (Acuity 30(b)(6) Dep. 145:1–3.)

8. Plaintiff served a notice of deposition of Ms. Babson on June 6, 2016, for a deposition to be held on June 24, 2016. (Pl.'s Mem. Opp'n Acuity's Mot. Protective Order Ex. G.) Acuity objected. Plaintiff filed an amended notice of deposition of Ms. Babson on July 29, 2016, for a deposition to be held on August 10, 2016. (Acuity's Mot. Protective Order Ex. A.) Acuity again objected. On August 8, 2016, Acuity filed the Motion for Protective Order, seeking to preclude Plaintiff from deposing Ms. Babson. Pursuant to Business Court Rule 15.4(a), the Court decides the Motion without hearing or oral argument.

## II.   ANALYSIS

9.      Rule 26 allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2015).  The Court has discretion to enter a protective order limiting discovery when "justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense." *Id.* § 1A-1, Rule 26(c).

10.     Acuity contends that justice demands a protective order to preclude Ms. Babson's deposition because any and all knowledge that Ms. Babson might have pertaining to the issues in this lawsuit is privileged from disclosure under the attorney–client privilege and the work-product doctrine.  As a result, Acuity argues, a deposition of Ms. Babson would consist of no more than a series of objections and instructions to Ms. Babson not to answer and would needlessly increase litigation costs.

11.     Acuity seeks to support its Motion by invoking a rule established by *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), known as the "*Shelton* rule."  *Shelton* sets out three criteria for determining whether an attorney deposition should be permitted to go forward.

12.     The *Shelton* rule, established primarily in response to efforts to depose opposing trial counsel, requires a party to demonstrate that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of

the case." *Id.* at 1327. The rule's stringency stems from the long-discouraged "practice of forcing trial counsel to testify as a witness." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 513, 516 (1947)). As the *Shelton* court explained, "[t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* Further, "the practice of deposing opposing counsel detracts from the quality of client representation" and has a "'chilling effect' . . . on the truthful communications from the client to the attorney." *Id.*

13. Only the Sixth and Eighth Circuits have definitively adopted the *Shelton* rule. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628–29 (6th Cir. 2002) (adopting *Shelton*); *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729–30 (8th Cir. 2002) (applying *Shelton*). Neither North Carolina's appellate courts nor the Fourth Circuit has expressly adopted the *Shelton* rule, but the rule has been applied by federal district courts in North Carolina, *see, e.g.*, *CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-CV-157-D, 2016 U.S. Dist. LEXIS 39024, at *16–19 (E.D.N.C. Mar. 23, 2016); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85–86 (M.D.N.C. 1987), and in a decision from this Court, *see Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC*, No. 11-CVS-127, 2012 NCBC LEXIS 46, at *26–29 (N.C. Super. Ct. Aug. 9, 2012) (Murphy, J.).

14. The majority of courts appear to reject a rigid application of the *Shelton* rule in favor of a "flexible approach" that allows the court to "take[] into consideration all of the relevant facts and circumstances to determine whether the proposed

deposition would entail an inappropriate burden or hardship." *In re Subpoena Issued to Friedman*, 350 F.3d 65, 72 (2d Cir. 2003); *see also N.F.A. Corp.*, 117 F.R.D. at 85 (noting that most courts that have allowed an opposing party's attorney to be deposed have required the party seeking the deposition to "establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome"). *But cf. CTB, Inc.*, 2016 U.S. Dist. LEXIS 39024, at *17 n.5 ("Because the court finds that [the defendant] meets the more stringent *Shelton* test, it need not consider whether other tests would yield different results or be better suited to the instant facts.").

15.    In some instances, courts have declined to apply the *Shelton* rule when the deponent is in-house counsel. *See, e.g., Buyer's Direct, Inc. v. Belk, Inc.*, No. 5:10-CV-65-H, 2012 U.S. Dist. LEXIS 113226, at *8–9 (E.D.N.C. Aug. 10, 2012) (finding the *Shelton* rule inapplicable where the attorney whom the plaintiff sought to depose was the defendants' assistant general counsel and where the subject matter of the deposition was not intended to elicit information relating to litigation strategy); *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002) (declining to apply *Shelton* where deponents were in-house counsel with "substantial non-legal, non-litigation responsibilities, including corporate, business, managerial, public relations, advertising, scientific, and research and development responsibilities" who were being deposed about "non-privileged, pre-litigation factual matters separate and apart from [the] litigation strategy").

16.     Rather than applying a bright-line rule based on a deponent's status as in-house counsel, courts that have declined to apply the *Shelton* rule to depositions targeting in-house counsel have recognized that the policy underlying the rule becomes less forceful when the deponent is shown to have knowledge of relevant, nonprivileged, factual information. *See, e.g., Sadowski v. Gudmundsson*, 206 F.R.D. 25, 26–27 (D.D.C. 2002) (allowing trial counsel to be deposed on nonprivileged, factual information); *N.F.A. Corp.,* 117 F.R.D. at 85 n.2 (noting that an attorney's deposition is "both necessary and appropriate" when the attorney is also a fact witness). The Court rejects Plaintiff's argument that the *Shelton* rule should never apply to in-house counsel. The Court discerns no policy reasons that should prevent the *Shelton* rule from extending to in-house counsel when a deposition targets only litigation strategies rather than necessary, factual information. *See Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 32, 541 S.E.2d 782, 791 (2001) (noting that "the protection given to communications between attorney and client apply equally to in-house counsel" (first citing *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981); then citing *Shelton*, 805 F.2d at 1326 n.3)).

17.     After due consideration, the Court finds, in its discretion, that the *Shelton* rule should not bar Ms. Babson's testimony in the circumstances here because the subject matter of the deposition is not targeted solely at eliciting information relating to Acuity's litigation strategy, and the deposition would not necessarily result in undue burden or expense. *See Buyer's Direct, Inc.*, 2012 U.S. Dist. LEXIS 113226, at *9. Ms. Babson serves not only as Acuity's general counsel

but also as vice president of compliance and risk management, and did so during the facts at issue in this litigation. Further, there is no evidence showing that Ms. Babson has been substantially involved with overseeing the litigation in this matter. Acuity's 30(b)(6) designee, Ms. Long, named Ms. Babson as the person who could best speak to certain clinical care standards and to consistency among Acuity's hospitals.

18. Accordingly, the Court concludes that a blanket order prohibiting Plaintiff from deposing Ms. Babson is not justified. To the extent that Ms. Babson has been involved with the litigation, if at all, Acuity may take appropriate steps during the deposition to prevent Ms. Babson from waiving privilege on questions extending to matters relating to the litigation. But the mere possibility that Plaintiff's inquiries to Ms. Babson might infringe on privileged matters does not justify a prohibition on Plaintiff's inquiries into the relevant, nonprivileged, factual information that Ms. Long has suggested Ms. Babson possesses. The Court thus concludes that Ms. Babson's deposition should be permitted to proceed, and Acuity may assert the attorney–client privilege on a question-by-question or subject-by-subject basis, as appropriate, during the deposition. *See Armada (Sing.) Pte Ltd. v. AMCOL Int'l Corp.*, 160 F. Supp. 3d 1069, 1070–71 (N.D. Ill. 2016) ("Questions of privilege must be assessed on a question by question basis and cannot be resolved fungibly even before the deposition begins.").

### III. CONCLUSION

19.     For the reasons stated in this Order & Opinion, and in its discretion, the Court DENIES Acuity's request for a protective order and allows the deposition of Ms. Babson to be taken in a manner consistent with this Order & Opinion.

SO ORDERED, this the 2nd day of November, 2016.


/s/ James L. Gale
_____
James L. Gale
Chief Business Court Judge