**STATIC CONTROL COMPONENTS, INC., Plaintiff,**

v.

**DARKPRINT IMAGING, Defendant.**

No. 1:99CV100612.

United States District Court, M.D. North Carolina.

June 11, 2001.

William L. London, III, Sanford, NC, Jennifer Heisinger, Bartlit Beck Herman Palenchar & Scott, Denver, CO, for Static Control Components, Inc., plaintiff.

Douglas W. Kenyon, Hunton & Williams, Raleigh, NC, Matthew Patrick McGuire, Hunton & Williams, Raleigh, NC, Timothy P. Getzoff, Donald A. Degnan, Holland & Hart, LLP, Boulder, CO, for Darkprint Imaging, Inc., defendant.

## *ORDER*

ELIASON, United States Magistrate Judge.

This matter comes before the Court upon its *sua sponte* reconsideration of its May 11, 2001 order which granted defendant Darkprint Imaging, Inc.'s ("Darkprint") motion for a protective order. (Docket No. 45)[1] The Order prevents plaintiff Static Control Components, Inc. ("Static Control") from taking discovery from Darkprint's lead litigation counsel, Mr. Getzoff.

Defendant Darkprint filed its motion for a protective order, pursuant to Fed.R.Civ.P. 26(c), soon after it received an April 10, 2001 notice for the deposition of Mr. Getzoff, to be taken in Colorado, with an accompanying subpoena *duces tecum.* The subpoena directed Mr. Getzoff to bring with him: "Any tapes, transcripts, or notes of any conversation between you, Walter Huffman and/or

---

1. The order granted the motion for being uncontested. Later, it was discovered that the Clerk had inadvertently failed to refer Static Control's opposition for consideration. Upon learning about the oversight, the Court directed Darkprint to file a reply brief, which it has, and the matter is now before the Court for reconsideration.

any current or former Static Control employees." Upon inquiry, Darkprint was informed that plaintiff sought to depose Mr. Getzoff concerning a telephone conversation Getzoff had with Mr. Huffman (the Director of Engineering for Static Control from 1991–1999), or any conversations with any Static Control employee, about the new mag roller project.

Static Control has known about Mr. Getzoff's contact with Huffman at least since September 13, 2000, when Mr. Getzoff filed an affidavit in the Colorado action[2] in order to take a second deposition of Mr. Huffman. The affidavit reveals that Mr. Getzoff telephoned Mr. Huffman in August 2000 and details a conversation wherein Huffman asserts that Static Control intentionally attempted to copy Darkprint's patent and took steps to fabricate testimony and suborn perjury (including Huffman's first deposition) to cover up this fact. Darkprint was allowed to redepose Mr. Huffman, but Huffman chose to take the Fifth Amendment when he was informed that the court had commented on the possibility of his prosecution for perjury.[3]

Darkprint urges the Court to grant a protective order preventing Getzoff's deposition for several reasons. First, it suggests that the deposition may be a last minute ploy to disqualify its lead litigation attorney. It bases the suggestion on the fact that Static Control knew about the Huffman interview for at least seven months prior to taking any action. Next, Darkprint argues that, because plaintiff now has the Huffman tape, there is no need for the deposition of Getzoff.[4] (However, in addition to the tape, plaintiff also requests Getzoff's notes and any other conversations he may have had with

Huffman which are not included in the transcript.) Darkprint further points out that Mr. Getzoff has been admitted *pro hac vice* in this Court and has submitted himself to this Court's disciplinary control. Consequently, even though the subpoena issued in the District of Colorado, Darkprint states that this Court should appropriately control the general scope of discovery in this case through ruling on the motion for a protective order.

In response, Static Control asserts that it only has a partial transcript of the Huffman telephone conversation. Static Control identifies its concern to be questions to Huffman "about Static Control's ongoing product development work," and in particular, the areas covering Static Control's efforts to build a plastic-coated roller, the success of the efforts, and the intended marketing plans. Static Control contends that the plastic-coated roller is a trade secret which is covered by a protective order and, therefore, providing or attempting to acquire information about it was clearly improper. As a consequence, Static Control now states that it wants to depose Mr. Getzoff to explore:

> (1) what confidential information of Static Control Mr. Getzoff has divulged to third parties; (2) what other employees or former employees of Static Control he has spoken with; (3) what other information he has solicited or disclosed concerning new Static Control products.

(Plaintiff's brief, at 4)

### Discussion

■ Plaintiff first argues that this Court should abstain from ruling on Darkprint's

---

**2.** Darkprint brought an action against Static Control in the District of Colorado alleging that Static Control infringed Darkprint's patent technology. Both companies sell a developer roller coated with a type of electroless nickel coating, although Static Control indicates it is working on a new plastic coated development roller. The instant action was filed in response to the Colorado action. In it, Static Control contends that defendant has misappropriated plaintiff's trade secrets by hiring five former employees.

**3.** Darkprint informs the Court that it has submitted the Huffman tape to the Colorado court for ruling on its admissibility under the hearsay exception of Fed.R.Evid. 804(b)(3) based on Mr. Huffman's "unavailability."

The instant case suffers from a further complication, inasmuch as plaintiff Static Control has filed a motion to disqualify Mr. Getzoff from being counsel in this action because of his contact with Mr. Huffman. Plaintiff considers the unconsented to, *ex parte*, contact with its former employee to be a breach of legal ethics. Static Control also seeks to exclude the Huffman tape or the transcript from use in this Court, except in order to prove that Darkprint, through Getzoff, has engaged in a concerted effort to obtain and misappropriate Static Control's trade secrets.

**4.** It is not clear whether Darkprint has actually given Static Control a copy of the original tape recording or merely a transcript of the recording.

motion for a protective order and instead, permit the court in the District of Colorado to determine the propriety of the subpoena. Plaintiff points out that, pursuant to the 1991 amendments to Fed.R.Civ.P. 45(c), the district court for the district which issued the subpoena should determine motions to quash or modify the subpoena. 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2459 (1995 ed.).[5] And Darkprint has, in fact, filed a motion to quash the subpoena in Colorado.

Plaintiff's position is correct, up to a point. Rule 45(c) clearly directs the district court which issued the subpoena to rule on motions to quash or modify it. However, that rule does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery. *Fincher v. Keller Industries, Inc.,* 129 F.R.D. 123, 125 (M.D.N.C.1990). A party's "discovery rights [in other districts] can rise no higher than their level in the district of trial." *Id.* Therefore, this Court will entertain Darkprint's motion for a Rule 26(c) protective order to limit or prohibit discovery on its litigation counsel.

### Decision on the Merits

■ Turning to the merits of the issue of whether a protective order should be granted, plaintiff is correct that defendant has "the burden of showing good cause . . . [for] the protective order . . . . [and must do so by making] a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one." *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C. 1991). By requesting the Court to prohibit plaintiff from deposing a witness, defendant Darkprint assumes a heavy burden because protective orders which totally prohibit a de-

position "should be rarely granted absent extraordinary circumstances." *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 84 (M.D.N.C.1987). On the other hand, a request to take the deposition of a party's litigation attorney justifies a departure from the general rule. *Id.* Although not all courts agree, this Court has determined that a request to depose a party's litigation counsel, by itself, constitutes good cause for obtaining a Fed.R.Civ.P. 26(c) protective order and further, that the motion may, and should, be filed prior to the scheduled deposition. *Id.* at 85. At that point, the burden of going forward then shifts to the party seeking the deposition to show the propriety and need for the deposition. It may do so by demonstrating, among other considerations, that (1) there are no persons other than the attorney available to provide the information; (2) other methods, such as written interrogatories, would not be as effective; (3) the inquiry will not invade attorney-client privilege or work product; and (4) the information is of such relevance that the need for it outweighs the disadvantages and problems inherent in deposing a party's litigation attorney. *Id.* at 86.

In the instant case, plaintiff Static Control does seek to depose defendant's trial attorney. Thus, defendant has established a possible basis for a protective order prohibiting the deposition. Consequently, the burden of going forward to establish the propriety and need for the deposition shifts to plaintiff.

To satisfy its burden, Static Control shows the deposition is appropriate and not contrived because, in this instance, the attorney is a legitimate fact witness due to his participation in alleged conversations about Static Control's trade secrets. There are no other persons available because Mr. Huffman asserts his Fifth Amendment privilege against further testimony. It further notes that an inquiry about "conversations" cannot be ef-

---

5. Only the court issuing the subpoena normally has jurisdiction over all of the persons, including persons served with the subpoena. In this case, however, the Court has jurisdiction over all of the involved persons, inasmuch as they are either parties or a party's attorney, who has been admitted *pro hac vice* in this Court. Nevertheless, this fact does not permit the Court to usurp the Colorado court's authority to quash or modify the subpoena. Rather, the Court enters the fray only because a party has filed a broad motion for a Rule 26(c) protective order that discovery not be had or else be conducted on limited terms. This issue extends well beyond the matter of a specific subpoena.

fectively conducted via written interrogatories. Static Control asserts that it will only be deposing Mr. Getzoff concerning non-privileged matters because the inquiry relates to his conversations with non-parties and consequently, any assertion of work product protection has been waived. Last, plaintiff contends it satisfied its burden of showing the subject matter of a Getzoff deposition is both a relevant and necessary one because the deposition will explore the attorney's alleged ethical violations and attempts to learn trade secrets.

■ A review of plaintiff's arguments in light of the above factors convinces the Court that although some discovery directed to the litigation attorney may be permissible, a deposition of him is not required at this time. First, the Court finds that plaintiff has shown a need to obtain discovery from Mr. Getzoff in regard to the Huffman conversation. Only Getzoff and Huffman were parties to it and Huffman is unavailable. This is in plaintiff's favor.

The Court further agrees that, to the extent the conversations were not recorded, deposition is clearly a superior method for discovering the full details of the conversations, as opposed to written interrogatories. On the other hand, if all the conversation was recorded, there is no need to depose the attorney. Darkprint contends in its reply that the tape of the conversation is complete except for "the first few seconds, when Mr. Getzoff first asked Huffman's permission to tape the interview." The Court will accept Darkprint's assertion for the time being, but only because the Court finds the relevance and need for a deposition to be small, as will be discussed later.

■ Plaintiff fails to show a need to depose Mr. Getzoff as to his conversations with

its employees or other former employees because it has no evidence of any conversations. As to them, at this stage, all that would be needed would be for Mr. Getzoff to identify the persons with whom he conversed on the subject matter. Plaintiff can then speak to them directly.

■ The fact that Static Control's subpoena seeks to inquire into potential work product does not factor into the decision to grant a protective order. The subpoena requests Mr. Getzoff's notes of the conversations, and that constitutes work product. However, plaintiff contends that defendant waived any work product protection by revealing and using the Huffman tape transcript.[6] The Fourth Circuit has held that such activity amounts to an implied waiver of the entire subject matter of the work product. *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). That broad waiver, however, only applies to non-opinion work product, such as notes and memoranda summarizing the interview, as opposed to marginal notes which would convey the attorney's own opinion work product mental impressions of the interview. *Id.* at 625 n. 1 and 626. Yet, because the line between non-opinion work product and opinion work product can be a fine one, *id.,* this Court hesitates to order Mr. Getzoff to reveal even non-opinion work product summary notes so long as the tape of the conversation is clearly audible so that a transcript of the tape accurately encompasses the entire conversation. As noted previously, defendant asserts that the tape transcript is complete, except for the brief greeting and introduction.

For the above reasons and for the moment,[7] the Court accepts defendant Dark-

---

**6.** Plaintiff fails to show that defendant has waived work product protection with respect to any other interview.

**7.** It may turn out that the conversation, or the non-recorded fragment, will assume greater importance than it does now. If so, and particularly if a deposition is permitted, the Court would then require Mr. Getzoff to turn over the pertinent summary notes of the interview. In the instant case, on the other hand, the relevance of the interview is based on Static Control's claims

that Mr. Getzoff violated a confidentiality order and misappropriated trade secrets. As will be seen next, Static Control has not demonstrated a strong need to depose Mr. Getzoff on these matters. By contrast, in the Colorado case, the interview has already assumed greater importance because defendant Darkprint wants to make evidentiary use of it.

print's assertions and declines to order that Mr. Getzoff turn over any notes of the Huffman interview. The brief unrecorded conversation will likely be fully revealed by Mr. Getzoff in his answers to written interrogatories.

■■■ Finally, in regard to the relevancy and need for the attorney's deposition, there are two aspects to plaintiff's motion. First, plaintiff asserts need based on allegations that Mr. Getzoff revealed trade secrets in violation of a confidentiality order. A violation of a protective order may result in sanctions, including sanctions arising from the court's inherent powers. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 267 (M.D.N.C.1988). This power includes the right to sanction attorneys. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ("The power of a court over members of its bar is at least as great as its authority over litigants."). Consequently, a request to depose an attorney based on alleged violation of a protective order can constitute good cause for deposition.

■■■ Plaintiff contends that Mr. Getzoff violated the protective order by disclosing his knowledge concerning Static Control's technology in plastic roller coating which would replace the nickel line. He learned of this information by deposing plaintiff's CEO, Ed Swartz.

Based on the interview transcript, it appears that Mr. Getzoff, in fact, did reveal this information first by asking Mr. Huffman a leading question about it.[8] However, Mr. Huffman was already knowledgeable about the product and, to some extent, the technology. Although there does appear to be a technical violation of the protective order, the violation seems to be both minor and without any resulting prejudice.[9]

The second and related basis for deposing Mr. Getzoff is plaintiff's allegation that he is attempting to learn and misappropriate Static Control's trade secrets concerning its plastic-coated developer and trade secrets in the form of the business plan concerning the marketing of that new technology. Mr. Getzoff had Mr. Huffman explain the new technology and asked Mr. Huffman what he knew about the business plan for the new roller. Yet, Mr. Huffman's knowledge was rudimentary and, in fact, as to the business plan, he only opined that Static Control wanted to get the new roller on line as fast as possible so it could enhance its litigation position by telling the Colorado court that it does not use the nickel roller any more. Furthermore, Darkprint shows that plaintiff's website (at least by now) itself discusses the new technology and plaintiff's business plan for it. Last, and equally important, is defendant Darkprint's allegation that Mr. Huffman has no confidentiality agreement with Static Control. If so, this tends to cast doubt on whether Mr. Huffman was under any obligation to not reveal matters spoken about in the conversation with Mr. Getzoff. Static Control has not shown otherwise.

In summation, the Court finds that Static Control has failed to show good cause for

---

**8.** Mr. Getzoff:—your memory. What—One question I have is, Ed has talked about this—some new technology mag roller coating.
Mr. Huffman: Right.
Mr. Getzoff: That they're working.
Mr. Huffman: Uh-huh.
Mr. Getzoff: And he basically said that this is—they've—they've—they figured it out. The[y] just simply licked the problem. It's a black roller.
Mr. Huffman: Right.
Mr. Getzoff: And that it's the best thing ever. Better than nickel, better than any other black rollers. And that eventually it's going to replace their nickel line.
Mr. Huffman: Right.
Mr. Getzoff: And in—Ed even said, during the deposition, as soon as we get this thing up and running, Darkprint can have the nickel technology, cause we won't be using it anymore.
Mr. Huffman: Right.
Mr. Getzoff: Do you know what—what's really going on with this? With that new technology?
(Huffman Tr. at 41)

**9.** It is also noted that the alleged violation of the protective order in this case would be a violation of a blanket or umbrella protective order and plaintiff Static Control has not, in fact, shown the Court that the information actually deserved protection. *See Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C.1988) (sanction denied).

presently taking the deposition of Darkprint's litigation counsel in this case or for obtaining the attorney's notes. As discussed above, to the extent Static Control has shown that counsel violated the protective order or obtained trade or business secrets, the Court finds any violation to be minor and not prejudicial. Nevertheless, because there was a technical violation and as a matter of caution, the Court will permit Static Control to send an interrogatory directed to Mr. Getzoff requiring him to reveal what *ex parte* conversâtions he has had with employees or former employees of Static Control (except those who are now or who have been employees of Darkprint Imaging). This will permit Static Control to interview those persons in order to ascertain whether Mr. Getzoff has, at other times, technically or otherwise violated the protective order signed by the parties in this case. Second, because of the technical violation of the protective order as revealed in the Huffman transcript and because Mr. Huffman now refuses to testify, Mr. Getzoff, as the only available witness, must, at a minimum, answer written interrogatories concerning background facts, such as the authenticity, accuracy, and completeness of the recording, and exactly what was said in any part of a Huffman interview which has not been recorded and turned over to Static Control.

**IT IS THEREFORE ORDERED** that the Court reaffirms its Order (docket no. 45) granting defendant Darkprint's motion for a protective order preventing Static Control's discovery on Darkprint's litigation attorney, Mr. Getzoff, for purposes of the instant case, but alters it to permit Static Control to send written interrogatories to Mr. Getzoff as discussed in the body of this order. Further, Darkprint will make sure Static Control has a copy of, or has access to, the Huffman tape recording and a transcript of the recording.