Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC, 2012 NCBC 45.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>WATAUGA COUNTY<br><br>BLUE RIDGE PEDIATRIC & ADOLESCENT MEDICINE, INC., a North Carolina professional corporation; A TO Z ENTERPRISES, LLC, a North Carolina limited liability company; GREGORY L. ADAMS, an individual; CLINTON B. ZIMMERMAN, JR., an individual; and WESLEY SCOTT ST. CLAIR, an individual,<br><br>     Plaintiffs,<br><br>v.<br><br>FIRST COLONY HEALTHCARE, LLC, a North Carolina limited liability company; FCHC - GREENWAY COMMONS LAND, LLC, a North Carolina limited liability company; FCHC - GREENWAY COMMONS INVESTORS, LLC, a North Carolina limited liability company; FCHC - GREENWAY COMMONS, LLC, a North Carolina limited liability company; FC HEALTHCARE, INC., a North Carolina corporation; FIRST COLONY HEALTHCARE HOLDINGS II, LLC, a North Carolina limited liability company; RANDY T. RUSSELL, an individual; DENNIS R. NORVET, an individual; BOBBY D. HINSON, an individual; FIRST COLONY HEALTHCARE II, LLC, a North Carolina limited liability company; FC HEALTHCARE II, INC., a North Carolina corporation; COLONY DEVELOPMENT PARTNERS, LLC, a North Carolina limited liability company; and COLONY MANAGEMENT, INC., a North Carolina corporation,<br><br>     Defendants. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>11 CVS 127<br><br><br><br><br><br><br><br><br><br>**ORDER & OPINION** |

*Harris, Creech, Ward and Blackerby, P.A., by W. Gregory Merritt, Thomas M. Ward, Jay C. Salsman, and Luke A. Dalton for Plaintiffs.*

*Brown Law LLP, by Gregory W. Brown and Justin M. Osborn for Defendants.*

Murphy, Judge.

{1}    **THIS MATTER** is before the Court on (1) Plaintiff Blue Ridge Pediatric and Adolescent Medicine, Inc.'s ("Blue Ridge") Motion to Compel Discovery; (2) Harris, Creech, Ward and Blackerby, P.A. (the "Harris Firm") and Plaintiffs' Motion to Quash Subpoena issued to the Harris Firm (the "Harris Motion"); and (3) Thomas M. Ward ("Ward") and Plaintiff's Motion to Quash Subpoena Issued to Ward, Counsel for Plaintiff (the "Ward Motion") in this case.

{2}    Having considered the parties' briefs and submissions, the Court **GRANTS** Blue Ridge's Motion to Compel Discovery; **DENIES** the Harris Motion; and **GRANTS** the Ward Motion, for the reasons set forth below.

I.

PROCEDURAL HISTORY

{3}    On March 8, 2011, Blue Ridge, A to Z Enterprises, LLC ("A to Z"), Gregory L. Adams, Clinton B. Zimmerman, Jr., John R. Lonas, and Wesley Scott St. Clair (collectively the "Doctors") brought this action against First Colony Health Care, LLC and several affiliated companies (collectively "First Colony"), Randy T. Russell ("Russell"), Dennis R. Norvet ("Norvet"), and Bobby Hinson ("Hinson").  (Compl. 39.)

{4}    Plaintiffs filed a Verified Amended Complaint on May 27, 2011.  (V. Am. Compl. 41.)

{5}    On July 8, 2011, Defendants filed a Motion to Dismiss nearly all of Plaintiffs' claims, citing lack of standing, failure to state a claim upon which relief may be granted, and failure to plead certain claims with particularity.  (Defs.' Mot. Dismiss.)  The Court held a hearing on Defendants' Motion to Dismiss on October 31, 2011.

{6}    By order dated May 14, 2012, the Court stayed all case management deadlines, including discovery, until August 13, 2012, and directed the parties to

engage in mediation before August 13, 2012.  (Blue Ridge Pediatric & Adolescent Medicine, Inc. v. First Colony Healthcare, LLC, No. 11 CVS 127 (N.C. Super. Ct. May 14, 2012) (order staying discovery).)

## II.

## FACTUAL BACKGROUND

{7}     Plaintiff Blue Ridge is a North Carolina professional corporation engaged in the delivery of pediatric and adolescent medical services.  The Doctors are all shareholders and directors of Blue Ridge, and are also members and managers of A to Z.  (V. Am. Compl. ¶¶ 2–3.)

{8}     Plaintiffs brought this action against First Colony and several of its agents who are in the business of real estate development and property management.  Plaintiffs seek to recover damages arising out of a real estate development and lease agreement between the parties.  (*See generally* V. Am. Compl.)

{9}     In early 2006, Plaintiffs put their existing office building on the market and began searching for a new location.  (V. Am. Compl. ¶ 14.)  Unable to locate an existing building to fit their needs, Plaintiffs instead decided to search for land on which they could construct a new building.  (V. Am. Compl. ¶ 15.)  They determined that their new office would need approximately 1.5 to 2 acres of land located close to the hospital where Plaintiffs routinely attend to patients.  (V. Am. Compl. ¶ 15.)

{10}   In Plaintiffs' search for a building site, one parcel (the "Templeton Property," owned by Templeton Properties ("Templeton")), appeared to be particularly suitable, but was larger than needed.  (V. Am. Compl. ¶ 16.)  However, Templeton would not agree to sell less than the entire parcel.  (V. Am. Compl. ¶ 16.)  As Plaintiffs explored options for utilizing the Templeton Property, they were referred to First Colony by Joe Joseph ("Joseph"), a representative of one of the construction companies Blue Ridge was considering to construct the planned building.  (V. Am. Compl. ¶ 17.)  Joseph volunteered to contact First Colony to inquire whether they would be interested in developing the Templeton Property.  (V. Am. Compl. ¶ 17.)  Plaintiffs were then introduced to Defendant Norvet, who

made a sales presentation and provided certain promotional materials detailing First Colony's construction and development expertise.  (V. Am. Compl. ¶¶ 18–20.)[1]

{11}  First Colony proposed a partnership to Plaintiffs whereby First Colony would develop the Templeton Property into a new medical office park and Blue Ridge would lease office space from First Colony for a period of ten years.  (V. Am. Compl. ¶ 20.)  Through a membership interest in several new limited liability companies to be formed by First Colony, Blue Ridge, through ownership in A to Z, would share the profits of the office park, as well as any profits from the subsequent sale of the Templeton Property.  (V. Am. Compl. ¶¶ 21, 107.)

{12}  In late December 2006, Plaintiffs indicated to First Colony a tentative decision to move forward with the proposed partnership.  (V. Am. Compl. ¶ 27.)  In response, Defendant Hinson prepared documents including a lease and an operating agreement.  (V. Am. Compl. ¶ 28.)  In early January 2007, Plaintiffs forwarded those documents to Ward for his review.  (V. Am. Compl. ¶ 29.)

{13}  In late February 2007, despite concerns raised by Ward, Plaintiffs decided to execute the deal as proposed, and on March 7, 2007, Blue Ridge entered into a ten-year lease agreement (the "Lease") on the yet-to-be-constructed office building.  (V. Am. Compl. ¶ 46.)  On the same day, A to Z and FCHC - Greenway Commons Land, LLC, a company created by Defendants to facilitate and implement the development project, executed an operating agreement (the "Operating Agreement").  (V. Am. Compl. Ex. Q.)  Plaintiffs allege that, as an inducement to enter the Lease, First Colony promised that profits arising out of the Operating Agreement would be distributed quarterly to A to Z.  (V. Am. Compl. ¶ 56.)

{14}  Plaintiffs moved into the completed office on or around March 21, 2008.  (V. Am. Compl. ¶ 57.)  To date, Blue Ridge has paid rents in excess of $971,000, but

---

[1] In the Amended Complaint, Plaintiffs assign the term "First Colony" to "First Colony Corporation"  (V. Am. Compl. ¶ 5), but later state, "collectively, for administrative ease First Colony Corporation and/or its Affiliates may be referred to herein as 'First Colony.'"  (V. Am. Compl. ¶ 10.)  This ambiguity, as to the identification of First Colony Defendants, has no bearing on the Court's resolution of these Motions.

A to Z has received no distributions of profits pursuant to the Operating Agreement. (V. Am. Compl. ¶¶ 56, 57.)

{15}   In October 2008, and March 2009, Plaintiffs asked Defendants about the payments detailed in the profit-sharing provisions of the Operating Agreement. (V. Am. Compl. ¶¶ 58–65.) When Plaintiffs compared the documents Defendants provided in response to Plaintiffs inquiry with the executed Lease and Operating Agreements, Plaintiffs noticed what they allege were material changes to certain contractual terms of the Operating Agreement. (V. Am. Compl. ¶¶ 42, 71.)

{16}   On June 29, 2011, Plaintiff Blue Ridge served Defendants Colony Development Partners, LLC; Colony Management, Inc.; FC Health Care II, Inc.; FC Health Care, Inc.; FCHC - Greenway Commons Investors, LLC; FCHC - Greenway Commons Land, LLC; First Colony Health Care II, LLC; First Colony Health Care, LLC; and First Colony Health Care holdings II, LLC (collectively the "Compel Defendants"); as well as FCHC - Greenway Commons, LLC, with their First Set of Interrogatories and Requests for Production of Documents. (Blue Ridge's Mot. Compel 1.)

{17}   With the exception of their responses to questions asking for the name and principal place of business, the Compel Defendants uniformly responded to each of the requests with a general, "<u>OBJECTION AND MOTION FOR PROTECTIVE ORDER</u>." (Blue Ridge's Mot. Compel Exs. 1–9.)

{18}   On October 6, 2011, Plaintiff Blue Ridge filed a Motion to Compel Defendants to complete their discovery responses to Plaintiff Blue Ridge's First Set of Interrogatories and Requests for Production of Documents. (Blue Ridge's Mot. Compel 1–6.) In response, the Compel Defendants filed an opposition memorandum with the Court that relied primarily on the expectation that the Court would order a dismissal of the case. (*See* Defs.' Opp'n to Blue Ridge's Mot. Compel.)

{19}   On October 5, 2011, Defendants' counsel issued a subpoena *duces tecum* (the "Document Subpoena"), to the Harris Firm (the law firm where Ward is employed), seeking to discover, *inter alia*, documents that purportedly gave rise to this litigation. (Harris Mot. Ex. A.)

{20}  On October 24, 2011, Plaintiffs and the Harris Firm moved to quash the Document Subpoena, and for entry of a protective order.  (Harris Mot. 1.)

{21}  The Document Subpoena, which contained neither the name of a natural person nor title of some responsible agent, was delivered by certified mail, return receipt requested, and addressed to, "Harris, Creech, Ward and Blackerby, P.A., 325 Pollock Street, New Bern, North Carolina, 28563," on October 5, 2011.  (Harris Mot. ¶ 1.)  In the upper-left section of the Document Subpoena, the parties were identified as, "Blue Ridge Pediatric & Adolescent MEdicine [sic], Inc., et al., [Plaintiffs], versus First Colony Healthcare, LLC, et al., [Defendants]."  (Harris Mot. Ex. A.)  The Document Subpoena commanded the production of documents to occur on October 21, 2011, at the Harris Firm.  (Harris Mot. Ex. A.)

{22}  Also on October 5, 2011, Defendants' counsel issued a subpoena to Ward (the "Ward Subpoena") compelling Ward to appear and be deposed.  (Ward Mot. ¶ 1.)

{23}  On October 24, 2011, Plaintiffs and Ward moved to quash the Ward Subpoena, and for entry of a protective order.  (Ward Mot. 5.)

III.

PLAINTIFF BLUE RIDGE PEDIATRIC & ADOLESCENT MEDICINE, INC.'S MOTION TO COMPEL DISCOVERY

{24}  Plaintiff Blue Ridge seeks an order from this Court compelling Defendants to complete discovery responses.  Defendants argue they have properly objected to Plaintiff Blue Ridge's discovery pursuant to Rule 33(a) of the North Carolina Rules of Civil Procedure.  (Defs.' Opp'n to Blue Ridge's Mot. Compel 1.)  Defendants further argue that Plaintiff Blue Ridge has not complied in good faith with Rule 18.6 of the General Rules of the Practice and Procedure for the North Carolina Business Court which requires attorneys to confer with each other prior to filing motions and objections relating to discovery.  (Defs.' Opp'n to Blue Ridge's Mot. Compel 4.)

{25}  Pursuant to the North Carolina Rules of Civil Procedure, objections to interrogatories must be specific and may be served as outlined in Rule 33, N.C. R.

Civ. P. 33(a), whereas motions for protective orders must be made under Rule 26(c). N.C. R. Civ. P. 33 cmt. to the 1975 Amendment (a)(1). As a general rule, once a party serves an objection in response to interrogatories, "the burden is on the interrogating party to move under Rule 37(a) for a court order compelling answers . . . ." N.C. R. Civ. P. 33 cmt. to the 1975 Amendment (a)(3). However, when a general objection to all of the interrogatories is made, it "should be the subject of a motion for a protective order pursuant to Rule 26(c)." Alan D. Woodlief, Jr., SHUFORD NORTH CAROLINA CIVIL PRACTICE AND PROCEDURE § 33:6 (6th ed. 2003).

{26} "'Whether or not the party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion.'" *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 433, 617 S.E.2d 664, 668 (2005) (quoting *Wagoner v. Elkin City Schs.' Bd. of Educ.*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994)).

{27} On June 29, 2011, Plaintiff Blue Ridge served the Compel Defendants, as well as FCHC - Greenway Commons, LLC, with Plaintiff Blue Ridge's First Set of Interrogatories and Requests for Production of Documents. (Blue Ridge's Mot. Compel 1.) With the exception of their responses to questions asking for the name and principal place of business, the Compel Defendants uniformly responded to each of the requests with a general:

> OBJECTION AND MOTION FOR PROTECTIVE ORDER. This request seeks information on behalf of a Plaintiff who lacks standing to bring claims related to this line of requests and whose claims are subject to a pending Motion to Dismiss. Therefore, this Plaintiff is not entitled to lodge these requests, which are premature and inappropriate. As such, the corresponding responses and productions should not be required or compelled until the Motion is ruled upon by the Court.

(Blue Ridge's Mot. Compel Exs. 1–9.)

{28} Despite stating their intent to file a motion for a protective order, both in the interrogatory responses (Blue Ridge's Mot. Compel Exs. 1–9) and the parties'

Case Management Report (Case Management Report 5), to date, Defendants have not filed any such motion with the Court.

{29} The appropriate means for the Compel Defendants to prevent or limit discovery that they contend is unreasonable, inappropriate, and excessive is to seek a protective order under Rule 26(c). Because no such motion has been made to this Court, the Court concludes that the Compel Defendants have not properly contested Plaintiff Blue Ridge's discovery requests.

{30} The Compel Defendants also argued that Plaintiffs' counsel failed to act in good faith pursuant to Business Court Rule 18.6, which requires parties to make "diligent attempts" to resolve discovery disputes. (Defs.' Opp'n to Blue Ridge's Mot. Compel 4); BCR 18.6(a) (2006). However, despite conflicting opinions in their memoranda as to its substance, neither party disputes that they held a conference prior to Plaintiff Blue Ridge's filing of the Motion to Compel. Accordingly, the Court concludes Compel Defendants' good faith argument is without merit.

{31} Plaintiff Blue Ridge's Motion to Compel is, therefore, **GRANTED**. Compel Defendants shall fully respond to Plaintiff Blue Ridge's First Set of Interrogatories and Requests for Production of Documents within thirty (30) days from the entry of this Order. All other relief sought in Plaintiff Blue Ridge's Motion to Compel is **DENIED**.

IV.

MOTION TO QUASH AND OBJECTION TO SUBPOENA ISSUED TO THE HARRIS FIRM

{32} The Harris Motion is premised on: (1) whether the Document Subpoena is facially and procedurally invalid, (2) whether a subpoena *duces tecum* is a proper discovery device, and (3) whether the Document Subpoena should be quashed for reasons of privilege. (Mem. Supp. Harris Mot. 3–6.)

A.

DEFINITION OF "PERSON" FOR PURPOSES OF SUBPOENAS

{33} Turning first to the question of whether the Document Subpoena is facially and procedurally valid, the Court must decide whether a subpoena directed to a corporation, without reference to an individual or agent of the corporation, is

sufficient to satisfy the rules of service prescribed by Rule 45 of the North Carolina Rules of Civil Procedure.

{34}   A subpoena must contain "[a] command to each *person* to whom it is directed . . . ." N.C. R. Civ. P. 45(a)(1)(b) (emphasis added).  "When the propriety of a subpoena *Duces tecum* is challenged, . . . the question is addressed to the sound discretion of the court in which the action is pending." *Vaughan v. Broadfoot*, 267 N.C. 691, 697, 149 S.E.2d 37, 42 (1966) (italics added).  Upon a motion made by a person commanded to produce and permit the inspection of documents, "[t]he court shall quash . . . the subpoena if the subpoenaed person demonstrates" that the subpoena is procedurally defective.  N.C. R. Civ. P. 45(c)(5).  "If service is challenged, the test is whether the record establishes 'substantial compliance' with Rule 5(b) [of the North Carolina Rules of Civil Procedure]." G. Gray Wilson, NORTH CAROLINA CIVIL PROCEDURE § 5-3 (3rd ed.) (quoting *Macon v. Edinger*, 303 N.C. 274, 278 S.E.2d 256 (1981)).

{35}   The North Carolina Supreme Court has stated that whether the word "person," as used in a statute, includes corporations may depend largely on statutory context.  *Wallace v. Moore*, 178 N.C. 114, 117, 100 S.E. 237, 239 (1919).  "To be a corporation in law or in fact . . . , [an entity] must fulfill the statutory requirements of the state it selects.  When it has done so, it becomes endowed with all the attributes of a 'person.'" James E. Snyder, Jr., NORTH CAROLINA CORPORATION LAW AND PRACTICE § 13.1 (4th ed.).

{36}   This Court is aware of no North Carolina case law precisely on point that addresses whether a defendant's failure to specify a natural person or agent amounts to a defect that obliges the Court to quash a subpoena directed to a corporation.  However, "[t]he North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970)).  Thus, decisions under the federal rules are instructive to the court in interpreting the North Carolina rules.  *Id.*

{37}   "[T]he general practice seems to be to direct [a] subpoena *duces tecum* to the officer of the corporation having the custody of the documents required . . . ."  C. T. Drechsler, Annotation, *Form, Particularity, and Manner of Designation Required in Subpoena Duces Tecum for Production of Corporate Books, Records, and Documents*, 23 A.L.R.2D 862, § 9 (1952) (italics added).  The necessity of such a requirement was, however, eliminated by the United States Supreme Court's ruling in *Wilson v. United States*, 221 U.S. 361, 374 (1911).  In *Wilson*, the Court stated "where the documents of a corporation are sought, the practice has been to subpoena the officer who has them in his custody.  But there would seem to be no reason why the subpoena *duces tecum* should not be directed to the corporation itself."  *Id.* (italics added); *see also Ex parte Monroe County Bank*, 49 So. 2d 161 (Ala. 1950) (holding a subpoena would not be refused because it was directed to the bank and not to its president); *Commonwealth v. S. Express Co.*, 169 S.W. 517 (Ky. Ct. App. 1914) (holding the production of books and papers of a corporation may be required by a subpoena *duces tecum* directed to the corporation itself and served upon its proper agent).[2]

{38}   The Federal rule and the North Carolina rule are procedurally identical with respect to issuing a subpoena, and require that "every subpoena" state a command to "each person to whom it is directed" to produce designated documents.  *See* Fed. R. Civ. P. 45; N.C. R. Civ. P. 45; *see also* Ala. R. Civ. P. 45; Ky. R. Civ. P. 45.01.  Reading the North Carolina Rules of Civil Procedure as a whole, and considering the persuasive authority from other jurisdictions, this Court holds that the meaning of the word "person" in the context of Rule 45 includes corporations.  *See* N.C. R. Civ. P. 45.

{39}   Here, the Document Subpoena contained neither the name of a natural person nor the title of some responsible agent, but was addressed to the Harris Firm and delivered by certified mail, return receipt requested.  Consistent with the

---

[2] *But see Keiffe v. LaSalle Realty Co.*, 112 So. 799, 801 (La. 1927) (holding a subpoena *deuces tecum* must designate "some officer or agent of the corporation").

Court's holding that the word "person," for purposes of a subpoena, includes corporations, the Court concludes that service of the Document Subpoena was sufficient to put the Harris Firm on notice of the request to produce documents. Accordingly, the Court concludes Defendants' counsel substantially complied with the service requirements of Rule 45 of the North Carolina Rules of Civil Procedure. N.C. R. Civ. P. 5(b). The Court, therefore, holds that the Document Subpoena was not procedurally defective.

## B.
## SUBPOENA DUCES TECUM AS A DISCOVERY TOOL

{40} The Harris Firm next argues the Document Subpoena should be quashed because it is not a proper discovery tool. (Harris Mot. 2.)

{41} "A subpoena *duces tecum* is appropriate to make discovery of documentary evidence held by a non-party." *Kilgo v. Wal-Mart Stores, Inc.*, 138 N.C. App. 644, 648, 531 S.E.2d 883, 887 n.5 (2000). A party's law firm is not itself a party to its client's case. *Kelley v. Agnoli*, 205 N.C. App. 84, 99, 695 S.E.2d 137, 147 (2010); *see also Bailey v. N.C. Dep't of Revenue*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000) (holding the Attorney General was not a party to a case in which he represented the State in a class action, and, therefore, could not individually appeal from the trial court's award of attorney fees to counsel for the class).

{42} Here, the Harris Firm represents Plaintiffs as legal counsel and, thus, is not a party to the action. Therefore, notwithstanding the privilege issue discussed below, the Court concludes the use of the Document Subpoena for purposes of compelling production of documents from the Harris Firm was otherwise a proper tool for obtaining discoverable material.

## C.
## SUBPOENA SEEKS PRIVILEGED MATERIALS AND IS IMPROPERLY BROAD

{43} Lastly, the Harris Firm objects to the Document Subpoena because (1) it requests the production of privileged materials, (2) it is improperly broad, and (3) compliance with the subpoena would be unduly burdensome because it would require a "physical search of all material in [the Harris Firm's] possession . . . and a

detailed review . . . to ensure protection of privileged matter." (Mem. Supp. Harris' Mot. 4–5.) The Court finds these arguments unpersuasive and lacking merit.

{44} Under the North Carolina Rules of Civil Procedure, a party is entitled to obtain any information that "appears reasonably calculated to lead to the discovery of admissible evidence . . . ." N.C. R. Civ. P. 26(b)(1). Section (d)(5) of Rule 45 states that:

> When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

N.C. R. Civ. P. 45(d)(5).

{45} "[A] party asserting [attorney-client] privilege can only meet its burden by providing some *objective* indicia that [the privilege] is applicable under the circumstances." *Miles v. Martin*, 147 N.C. App. 255, 259–60, 555 S.E.2d 361, 364 (2001) (internal quotations omitted).

{46} When assessing whether a particular communication is protected by attorney-client privilege:

> [A] trial court is not required to rely solely on an attorney's assertion that a particular communication falls within the scope of the attorney-client privilege. In cases where the party seeking the information has, in good faith, come forward with a non[-]frivolous assertion that the privilege does not apply, the trial court may conduct an in camera inquiry of the substance of the communication.

*In re Investigation of the Death of Miller,* 357 N.C. 316, 336, 584 S.E.2d 772, 787 (2003) (italics of Latin phrase removed).

{47} In conducting such an inquiry, a court must apply a five-part test to determine whether a particular communication is privileged:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper

purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*Raymond v. N.C. Police Benevolent Ass'n., Inc.*, 365 N.C. 94, 100, 721 S.E.2d 923, 927–928 (2011) (quoting *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981)).  If any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged. *Murvin*, 304 N.C. at 531, 284 S.E.2d at 294.

{48}   While neither admitting nor denying possession of any subpoenaed documents, the Harris Firm moves this Court to quash the Document Subpoena because of its express language requesting "all materials, *whether considered privileged or not*, that relate to the transactions and execution of instruments that give rise to this litigation."  (Harris Mot. Ex. A (emphasis added); Mem. Supp. Harris Mot. 5.)

{49}   The Harris Firm has not complied with the Rule 45 requirement that objections citing privilege be specific and include a description of the document not produced sufficient for Defendants to contest the objection.  N.C. R. Civ. P. 45(d)(5). Therefore, the issue of attorney-client privilege is not properly before the Court.  If the Harris Firm had none of the subpoenaed documents, it might have complied with the Document Subpoena by filing an objection on the basis that the documents requested were not within the Harris Firm's possession. *See generally*, 8A AM. JUR. *Pleading & Practice Forms Depositions and Discovery* § 522 (2012).

{50}   Although the Harris Firm's eventual compliance with Rule 45 and this Order may preclude the need for further intervention by the Court in this discovery dispute, the Court notes that Plaintiffs' pleadings and briefs describe documents in the Harris Firm's possession that may fail the second prong of the test cited in *Raymond* because the documents were not exchanged in confidence.  For example, "[o]n December 11, 2010, [Plaintiffs' office manager Laura] Hardee and Plaintiffs' counsel traveled to the office of First Colony . . . [where] Plaintiffs [were] provided . . . copies of the executed documents for the project."  (V. Am. Compl. ¶ 70.)  Documents that Plaintiffs claim were created by Defendants are not likely to

be subject to any confidence. (V. Am. Compl. ¶ 71.) That "Plaintiffs' counsel" was present at the December 11, 2010, meeting leaves open the possibility that a prudent attorney would retain evidence he feels is important to his clients' impending lawsuit. Therefore, it is reasonable for Defendants to believe the Document Subpoena may lead to admissible evidence to which attorney-client privilege would not attach. *See* N.C. R. Civ. P. 26(b)(1). The Court, however, recognizes that there may be valid claims of privilege with regard to other documents in the Harris Firm's possession, e.g., documents in the possession of the Harris Firm that were created by Plaintiffs and their counsel in confidence.

{51}  Lastly, the Harris Firm's contention that the Document Subpoena is overly broad is unconvincing. Defendants conspicuously used limiting language by requesting materials "referenced in the Verified Amended Complaint." (Harris Mot. Ex. A.) Equally unconvincing is the Harris Firm's assertion that compliance with the Document Subpoena would require searching all material in its possession. As Plaintiffs' counsel in this action, the Harris Firm arguably has already compiled, sorted, even scrutinized, for the purpose of drafting Plaintiffs' complaint, the very information it has refused to produce. For these reasons, the Court concludes that the Harris Firm has failed to establish grounds upon which this Court should quash the Document Subpoena.

{52}  For the reasons stated above, the Court concludes that the Document Subpoena was a proper discovery device and that the Harris Firm has not complied with the requirements for asserting attorney-client privilege.

{53}  The Court further concludes that the Document Subpoena is limited in scope to matters and things relevant and germane to this action, and that it is not issued as a device to harass the moving parties and unnecessarily increase the cost of litigation. Accordingly, Plaintiffs have failed to demonstrate that the requested documents should be protected.

{54}  The Harris Motion is, therefore, **DENIED** and Objection **OVERRULED.** Plaintiffs and the Harris Firm shall: (1) produce all requested documents that are not subject to an applicable privilege within thirty (30) days from the entry of this

Order; (2) produce a privilege log for all documents that have been withheld subject to a claim of privilege within thirty (30) days from the entry of this Order; (3) meet or confer with Defendants within ten (10) days from the date the privilege log is produced to discuss any disagreements over the designation of a responsive document as privileged; and (4) if after conferring the parties are unable to agree on its classification, the Harris Firm will submit all disputed documents for which a claim of privilege has been made to the Court for in camera review.

V.

MOTION TO QUASH AND OBJECTION TO SUBPOENA ISSUED TO WARD

{55}   On October 24, 2011, Plaintiffs and Ward moved to quash the Ward Subpoena, and for entry of a protective order.  (Ward Mot. 1.)

{56}   Plaintiffs' brief in support of the Ward Motion argues that (1) the subpoena is improper as it commands an opposing party's litigation counsel to appear for a deposition; (2) the subpoena is facially and procedurally invalid; and (3) the subpoena was issued to harass the moving parties and unnecessarily increase the cost of litigation.  (Mem. Supp. Ward Mot. 2–5.)

{57}   Plaintiffs' first argument raises the issue of attorney-client privilege and its application in the context of deposing a party's counsel.  (Mem. Supp. Ward Mot. 3.)  Under the North Carolina Rules of Civil Procedure, a party is entitled to discover any information that "appears reasonably calculated to lead to the discovery of admissible evidence . . . ."  N.C. R. Civ. P. 26(b)(1).  Parties may obtain discovery by depositions upon oral examination, "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."  *Id.*  The court shall limit discovery where "the discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive[,]" or where "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitation on the parties' resources, and the importance of the issues at stake in the litigation."  N.C. R. Civ. P. 26(b)(1a).  Where good cause is shown, the court "may make any order which justice requires to protect a party" from discovery that exceeds the scope of

this rule. N.C. R. Civ. P. 26(c). This Court is aware of no North Carolina case law addressing whether a party can depose the opposing party's litigation counsel. Therefore, the Court again looks to decisions under the federal rules for guidance. *Turner*, 325 N.C. at 164, 381 S.E.2d at 713.

{58} The seminal case on the issue of deposing litigation counsel is *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which limited the deposition of opposing counsel to circumstances "where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged [sic]; and (3) the information is crucial to the preparation of the case." *Id.* at 1327 (internal citation omitted). Courts throughout the country, including North Carolina's federal courts, have adopted the *Shelton* test. *See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987) (granting a motion for protective order preventing deposition of a party's patent attorney); *Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 201 F.R.D. 431 (M.D.N.C. 2001) (reaffirming a protective order preventing discovery on Darkprint's trial attorney).

{59} In *Shelton*, the plaintiffs subpoenaed defendants' in-house attorney, who was assigned to supervise the litigation. 805 F.2d at 1325. Because of this status, plaintiffs' counsel refused to answer questions concerning the existence or non-existence of certain documents that would be pertinent to the plaintiffs' underlying products liability case. *Id.* The Eighth Circuit reversed a district court ruling granting a motion for default judgment as a sanction for refusal to answer deposition questions, reasoning that requiring opposing counsel to testify as a witness "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* at 1327. Specifically, the court noted that requiring an attorney to answer questions regarding the existence of certain documents would authorize disclosure of protected work-product because it would require the attorney to reveal her selective mental process. *See id.* at 1329. However, the Eighth Circuit expressly

declined to grant absolute immunity to "opposing trial counsel" from being deposed, and instead set forth the three requirements noted above as prerequisites that must be met before a party may depose the opposing party's litigation counsel. *Id.* at 1327.[3]

{60} Courts that have declined to apply *Shelton* have done so when the proposed deponent is (1) not trial or litigation counsel, and (2) when such questioning would not expose litigation strategy in the pending case.[4] *United States v. Philip Morris, Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002). In addition, the Eighth Circuit limited the *Shelton* rule's reach in *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002), stating that "[t]he *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a *pending* case which could potentially lead to the disclosure of the attorney's litigation strategy."[5] *Id.* (emphasis added).

---

[3] Two other circuits have upheld lower court rulings premised on *Shelton* on the grounds that the rulings were within the lower courts' discretion to manage discovery under Rule 26. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 830–31 (10th Cir. 1995) (approving of the three-pronged test set forth in *Shelton*, but ultimately upholding the district court's application of the rule under Rule 26); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999) (adopting *Shelton*'s statement that depositions of opposing counsel are generally disfavored and should only be permitted in limited circumstances, but upholding a lower court's decision to permit plaintiff to depose opposing trial and in-house counsel under Rule 26).

[4] The Second Circuit has also weighed in on *Shelton*, stating that it has "cited *Shelton* for the proposition that depositions of 'opposing counsel' are disfavored," but that it has "never adopted the *Shelton* rule . . . ." *In re Subpoena Issued to Friedman*, 350 F.3d 65, 71 (2d Cir. 2003) (citing *Gould Inc. v. Mitsui Min. & Smelting Co.*, 825 F.2d 676, 680 n.2 (2d Cir. 1987)). Instead of *Shelton*'s three elements, the *Friedman* court preferred "factors" in determining whether the proposed deposition would entail an inappropriate burden or hardship, such as "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* at 72.

[5] In *Pamida*, the court held the heightened protection afforded under *Shelton* does not extend to an attorney who happens to later represent the same client in an unrelated action. 281 F.3d at 730. The court allowed the deposition of counsel in a pending action where a party sought "relevant information uniquely known by [opposing litigation counsel] about prior terminated litigation, the substance of which [was] central to the pending case." *Id.* at 731.

{61}    While not binding on this Court, *Shelton* and its progeny offer guidance to the Court in deciding this motion.  This Court concludes that the *Shelton* test is appropriate in this case because the test closely parallels the language of Rule 26, which allows a party to limit discovery by convincing a court that information sought in discovery by deposition, upon oral examination, is (1) not "obtainable from some other [less burdensome] source . . . ," (2) "not privileged . . . ," and (3) "importan[t to] the issues at stake in the litigation."  N.C. R. Civ. P. 26(b)(1).

{62}    Based on the foregoing, the Court concludes that Defendants have failed to demonstrate the propriety and need for deposing Ward.[6]  Specifically, Defendants suggest they wish to depose Ward about "advice, communications, and receipt of documents [that are] the basis" of Plaintiffs' suit.  (Defs.' Opp. Ward Mot. Mem. Law Supp. 2.)  Such knowledge is precisely the type of information *Shelton* attempts to protect from disclosure by litigation counsel in a deposition.  Defendants have not shown that: (1) there are no other means to obtain the information sought; (2) the information Ward possesses is relevant and non-privileged; and (3) the information is critical to the issues at stake in this litigation.  *Shelton*, 805 F.2d at 1327.  Accordingly, Defendants' subpoena directed to Ward should be quashed.

{63}    In addition, pursuant to Rule 26(c) of the North Carolina Rules of Civil Procedure, the Court finds good cause for entry of a protective order prohibiting Defendants from seeking the deposition of Thomas M. Ward regarding any matter in this case, absent authorization by the Court.

{64}    Furthermore, the Court determines that service of the Document Subpoena was sufficient to put Ward on notice of his deposition upon oral examination.  Accordingly, the Court concludes that the record establishes

---

[6] Defendants attempt to distinguish the instant case from *Shelton*, by noting a Louisiana case where the attorney from whom a deposition was sought was "not involved in trial preparation."  *Anserphone of New Orleans, Inc. v. Protocol Commc'ns, Inc.*, 2002 WL 31016572, at *2 (E.D. La. 2002).  However, because Thomas M. Ward signed the Amended Complaint, the Court finds this argument without merit.  (V. Am. Compl. ¶ 41.)

Defendants' counsel substantially complied with the service requirements. Wilson, *supra* at § 5-3; N.C. R. Civ. P. 5(b).

{65} In light of the above, the Court need not address whether the Ward Subpoena was issued to harass the moving parties and unnecessarily increase the cost of litigation.

{66} Accordingly, the Ward Motion is **GRANTED** and Objection **SUSTAINED.** Defendants are prohibited from seeking the deposition of Thomas M. Ward regarding any matter in this case unless expressly ordered by the Court. All other relief sought by Plaintiffs is **DENIED**.

VI.

CONCLUSION

{67} **IT IS HEREBY ORDERED** that: (a) Plaintiff Blue Ridge's Motion to Compel Discovery is **GRANTED**; Compel Defendants are **HEREBY ORDERED** to fully respond to Plaintiff Blue Ridge's First Set of Interrogatories and Requests for Production of Documents within thirty (30) days from the entry of this Order and Opinion; all other relief sought by Plaintiff Blue Ridge in its Motion to Compel Discovery is **DENIED**; (b) the Harris Motion, is **DENIED** and Objection **OVERRULED**; Plaintiffs and the Harris Firm are **HEREBY ORDERED** to: (1) produce all requested documents that are not subject to an applicable privilege within thirty (30) days from the entry of this Order; (2) produce a privilege log for all documents that have been withheld subject to a claim of privilege within thirty (30) days from the entry of this Order; (3) meet with movants within ten (10) days from the date the privilege log is produced to discuss any disagreements over the designation of a responsive document as privileged; and (4) if, after conferring, the parties are unable to agree on the classification of a responsive document, the parties will submit all disputed documents for which a claim of privilege has been made to the Court for in camera review; and (c) the Ward Motion is **GRANTED** and Objection **SUSTAINED**; Defendants are prohibited from seeking deposition on oral examination of Thomas M. Ward regarding any matter in this case unless expressly ordered by this Court; that all other relief sought in the Ward Motion is **DENIED**.

**SO ORDERED**, this the 9th day of August, 2012.